**Samuel J. LICOCCI, Plaintiff-Appellant,**

**v.**

**CARDINAL ASSOCIATES, INC.,
Defendant-Appellee.**

**Gil PAPP, Plaintiff-Appellant,**

**v.**

**CARDINAL ASSOCIATES, INC.,
Defendant-Appellee.**

**No. 1–785 A 172.**

Court of Appeals of Indiana,
First District.

April 29, 1986.

Rehearing Denied June 3, 1986.

R. Eugene Johnson, Thomas J. Kimpel, Donald J. Fuchs, Merrill, Johnson & Kimpel, Evansville, for plaintiffs-appellants.

Charles L. Martin, Boonville, for defendant-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellants, Samuel J. Licocci (Licocci), and Gilbert Papp (Papp), appeal

judgments rendered by the Gibson Circuit Court, without a jury, in favor of defendant-appellee and counterclaimant, Cardinal Associates, Inc. (Cardinal), in a claim for damages allegedly resulting from violations of covenants not to compete contained in two separate employment contracts. The suits were filed separately but were consolidated for trial and appeal. We reverse.

## STATEMENT OF THE FACTS

Cardinal entered into separate but identical contracts with Licocci and Papp by the terms of which Licocci and Papp, beginning July 31, 1979, would become representatives to sell Cardinal's products to fundraising groups, such as bands, glee clubs, and cheerleader groups, in certain defined, but separate territories in Illinois. The contracts continued from year to year but could be terminated by either party by written notice delivered at least 30 days prior to the termination. The contracts contained covenants not to compete forbidding Licocci and Papp after termination from: (1) soliciting any Cardinal client for 60 days; (2) engaging in any sales activity in the particular territory for 60 days; and (3) selling similar products to former clients for one year after termination. This clause was held valid in a prior appeal of this case challenging a temporary injunction in *Licocci v. Cardinal Associates, Inc.* (1983), Ind., 445 N.E.2d 556. That case determined only the propriety of a temporary injunction. The case was remanded for trial on the merits.

By the terms of the original contracts, Licocci and Papp were paid solely on a commision basis, and Clause Five thereof constituted them as independent contractors. However, on January 17, 1980, Licocci and Papp each executed with Cardinal an identical modification of their contracts which significantly changed the legal relation of the parties and the manner of payment. Stripped of formal parts and clauses not relevant to this inquiry, the modification is as follows:

"1. This agreement replaces any previous agreement or attachments concerning REPRESENTATIVES commission, draw, wages, or any form of compensation & specifically deletes Paragraph # 5 of the Representation Agreement dated _____ between the parties hereto.

2. All other provisions of Representation Agreement remain same and unchanged.

3. The Sales Representative shall be permitted to draw the sum of _____ each week, less applicable withholding taxes against commissions either earned or to be earned. Federal withholding taxes will be withheld on taxable income and pursuant to Signed W–4.

4. Draw will be reviewed and/or amended between the last week of each 13 week quarter and the first week of the next quarter. This quarterly review will be subject to the following exceptions.

A. Immediate review of the amount of Draw if commissions accumulated should fall below ($3,000.00) three thousand dollars.

B. ($1,000.00) One thousand dollars must remain in account to cover prizes, returns, credit memos, bad accounts, etc.

5. Twice yearly REPRESENTATIVE may draw upon written request up to but may not exceed 20% of his accumulated commissions less draws and in compliance with paragraph 3. This extra draw may be taken between the (1) first and (15) fifteenth day of December and the (15) fifteenth day of April. Employer requests (1) week notice before draw is taken.

6. EMPLOYER'S fiscal year ends each June 30th. The year-end draw from the Reserve account will be computed as follows:

A. Commissions on units sold and delivered are computed throughout the fiscal year and credited to the sales Representatives' reserve account. The

net amount remaining in said account on July 31, is due and payable on September 15 of the same year.

\* \* \* \* \* \*

The Sales Representative shall receive such resulting amount as a year-end draw, payable on or before September 15th; provided his commissions between July 30th and September 15th have equaled or exceeded this weekly draw for that period and $1000 remains in the account as stated in Paragraph (4-B). If his commissions are less than his weekly draw during July and August, then the year-end draw will be reduced by an amount equal to such excess draw.

The aforesaid draw by the REPRESENTATIVE from the EMPLOYER shall be in effect only so long as the REPRESENTATIVE shall devote his full time exclusive of any other employment of activities for compensation to the performance of the REPRESENTATIVES' obligation under aforesaid REPRESENTATIVES' AGREEMENT and in the event that the REPRESENTATIVE herein shall for any period of time receive and accept the aforesaid draw during which time the said REPRESENTATIVE shall not have devoted his full time as aforesaid to the performance of said REPRESENTATIVES' AGREEMENT, the EMPLOYER shall have a cause of action against the REPRESENTATIVE and be entitled to recover from the REPRESENTATIVE the amount of such draw less the actual amount of commission earned by the REPRESENTATIVE during such period. In addition to other consideration for this amendment the EMPLOYER will hereafter by paying the EMPLOYER'S share of social security taxes on the SALES REPRESENTATIVE, which had previously been paid by said REPRESENTATIVE."

Cardinal's fiscal year ended on June 30. Thus, the four thirteen-week quarters ended on September 29, December 29, March

30 and June 30. Papp sent Cardinal his letter of termination dated March 2, 1981. Cardinal responded with its letter dated March 11, 1981, in which it terminated Papp's employment contract 30 days after receipt of Papp's letter, i.e., as of April 4, 1981. Licocci mailed his letter of resignation to Cardinal on March 6, 1981, terminating the contract as of April 6, 1981. Cardinal, by letter, terminated Licocci's contract as of April 9, 1981, thirty days after the receipt of Licocci's letter.[1]

At the time of the terminations the weekly draws of Licocci and Papp were $800.00 and $1,200.00 respectively, which amounts had been agreed upon by the parties subsequent to the January 17, 1980, modification. At termination, Papp's escrow account of accumulated commissions was $29,061.51 and Licocci's escrow account was $14,714.36. In conjunction with their termination letters, Licocci and Papp each requested payment of the April biannual 20% draw, which was requested more than seven days prior to April 1, 1981.

On March 20, 1981, Cardinal cut Papp's weekly draw to $800.00 per week, and on April 10, 1981, Cardinal cut both Papp's and Licocci's weekly draw to $400.00 per week. By May 1, 1981, Cardinal had reduced both Licocci's and Papp's weekly draws to zero. Cardinal also refused to pay Licocci and Papp their April biannual 20% draws. In addition, Cardinal had never paid Papp his 1980 year-end settlement, due and payable on September 15, 1980. On April 22, 1981, Licocci and Papp filed separate suits against Cardinal seeking payment of their accumulated commissions. Cardinal, on May 1, 1981, filed its counterclaim against Licocci and Papp claiming that Licocci had been in violation of the covenants not to compete since April 9, 1981, and that Papp had been in violation of those covenants since April 4, 1981. Upon trial, the court found that Cardinal owed Licocci $14,714.36 as of September 15, 1981, and that it owed Papp $29,061.51

---

1. We note that the trial court erred in finding that the termination dates were April 1 and 5 respectively.

since that date. However, it denied their claim for double damages and attorney fees under IND. CODE 22–2–5–1 and 2. It also found for Cardinal on its counterclaim and awarded it damages against Licocci for $37,407.96, and against Papp for $48,064.87. It is from these judgments that Licocci and Papp appeal.

## ISSUES

Licocci and Papp claim on appeal that the trial court erred in:

I. Finding that Licocci and Papp had violated the covenants not to compete.

II. Finding in Cardinal's favor on the counterclaim.

III. Using an erroneous method of calculating damages.

IV. Finding that the accumulations of Licocci's and Papp's earned commissions were not wages for purposes of IND. CODE 22–2–5–1 and 2 which would entitle them to double damages and attorney fees.

Cardinal raises a cross-appeal asking an additional $12,658.00 in damages because programs which Papp had sold prior to termination had subsequently been cancelled. Because our decisions on Issues II and IV are dispositive of this appeal, we will address only those issues.

## DISCUSSION AND DECISION

Issue II. *First Breach.*

As shown in the Statement of Facts, Cardinal failed to pay Papp's September 15, 1980, year-end settlement. Additionally, on March 20, 1981, after notice of termination had been given but while Papp was still an employee, Cardinal unilaterally cut his weekly draw. Cardinal again cut his weekly draw on April 10, 1981, terminated it altogether on May 1, 1981, and refused to pay him his April biannual 20% draw. By the clear terms of the contract Cardinal owed Papp the September 15, 1980, year-end settlement plus the April biannual 20% draw. Regarding the weekly draw, Cardinal could review it within one week on either side of the quarter ending March 30, 1981, or when accumulated commissions fell below $3,000.00. However, neither of these conditions occurred. Cardinal also refused to pay Licocci his April biannual 20% draw despite his having given the proper request, and cut his weekly draw on April 10, 1981, to $400.00, and terminated it altogether on May 1, 1981. Licocci and Papp contend that these acts of Cardinal amounted to the initial material breach of their employment contracts, and therefore, they were thereafter released from their covenants not to compete.

A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract. *Lawrence v. Cain* (1969), 144 Ind.App. 210, 245 N.E.2d 663; *Records v. Smith* (1920), 72 Ind.App. 618, 126 N.E. 335; 6 I.L.E. *Contracts* Secs. 221 and 234 (1958); *see also Loudenback Fertilizer Co. v. Tennessee Phosphate Company* (6th Cir. 1903), 121 F. 298; 17 AM.JUR.2D *Contracts* Sec. 365 (1964). This rule was discussed and applied in *Lawrence, supra,* a case involving a suit on a covenant not to compete. That court quoted with approval 17 AM.JUR.2D *Contracts* Sec. 365 (1964), which reads as follows:

> "As a rule, a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform ... where a contract is not performed the party is guilty of the first breach is generally the one upon whom rests all the liability for the nonperformance.... A party who has himself been guilty of the first substantial breach of contract cannot rescind the contract because of the subsequent refusal or failure by the other party to perform."

A party who fails to make payments as required by a contract is guilty of a breach thereof. *Brown v. Markland* (1899), 22 Ind.App. 652, 53 N.E. 295.

Cardinal presents a number of counterarguments. First, it contends that evidence exists that Papp and Licocci first breached the employment contracts by violating their covenants not to compete. In its counterclaims, Cardinal alleged that Licocci had been in violation of the covenants since April 9, 1981, and that Papp had likewise been in violation since April 4, 1981, dates coinciding with their respective terminations. The "supporting" evidence at trial to which Cardinal directs our attention is as follows:

1. A Mr. Peterson's testimony, without specification as to a time period, that three of Cardinal's customers had been contacted by Papp "prior to May 6, 1981."

2. A Mr. Shelton's testimony that he was told by a former customer of Licocci that Licocci had made a sale to that former customer some four days prior to May 14, 1981.

3. Papp's admission that he called on a customer within 60 days of his termination. That admission went as follows:

   "Q. You wouldn't deny that you called upon persons during April *or* May of '81 would you? (Our emphasis.)

   A. I wouldn't deny it, no."

   *Record* at 1030.

4. A letter from Licocci's attorney to a Mr. Rawlings, who replaced Licocci as territorial representative, dated August 10, 1981, acknowledging that Licocci had made some sales to former Cardinal customers.

5. Rawlings' testimony that in the fall of 1981, he called upon a former Cardinal customer to whom Licocci had made a sale, and that he could not make sales in Licocci's former territory because Licocci had the business "sewed up."

   *Record* at 1091.

6. A Mr. Peterson's testimony that he left Cardinal's employ as a sales representative because he could not make a living by selling Cardinal's products in Licocci's former territory.

7. Cardinal's president's testimony that he had severe difficulty getting anyone to work in Papp's territory because of Papp's continuing competition. Again, no time period was mentioned.

8. Exhibits showing that Licocci and Papp had made sales to former Cardinal clients in the fall of 1981.

As seen above, there is no evidence that Licocci breached his contract prior to May 10, 1981. Thus, any breach by Licocci occurred after Cardinal had unilaterally cut his weekly draw and refused to pay him his April biannual 20% draw. There is also no evidence that Papp breached his contract prior to some indefinite time in April of 1981, long after Cardinal had failed to pay him his September 15, 1980, year-end settlement, and even after Cardinal had unilaterally cut his weekly draw and had refused to pay him his April biannual 20% draw.

■ Cardinal next argues that Papp failed to demand his September 15, 1980, year-end settlement. Papp's contract does not require such a demand. Under the evidence, the year-end settlement was, without explanation, not paid. A demand for performance, unless required by the terms of the contract, is not required where an agreement is absolute and unconditional. *Ferguson v. State ex rel. Hagans* (1883), 90 Ind. 38; *Frazee v. McChord* (1848), 1 Ind. 224; 17A C.J.S. *Contracts* Sec. 478 (1963). The latter case applies to contracts for payment of money where the terms are fixed.

Cardinal next argues that, under Licocci's and Papp's contracts, the reduction of the weekly draws was permissible because they were in effect only so long as Licocci and Papp devoted full time as Cardinal's sales representatives. Therefore, after termination, Cardinal had no duty to distribute the weekly draws. Under the same reasoning, Cardinal argues that since the April 20% biannual draw was not due until April 15, 1981, at which date Licocci and Papp were no longer employees, there was no duty to make the distributions. We

emphasize that there was absolutely nothing in the contracts that suggests the manner by which Cardinal is to deal with and pay accumulated commissions remaining after termination of the contract. It is clear to us that the provisions as to the manner of payment apply only so long as the employment continues.

■ There are two ways in which payment of the accumulated commissions can be accomplished. First, contract terms could be followed and the weekly draws, the April biannual 20% draws, and the September 15th year-end settlements, would be paid on schedule. However, Cardinal ignored the weekly draws and the April biannual 20% draws and only acquiesced to the September 15 year-end settlement after the court found the settlement to be due. We are of the opinion that all of the contracts' terms regarding payment should be followed or none of them should be followed. We are further unpersuaded by Cardinal's argument that since Licocci and Papp worked less than full time after their terminations, they were not entitled to the full weekly draws. The provision in the contracts regarding the weekly draws being contingent on full time effort is clearly intended to apply to a situation where the earned commissions during a particular period of time were less than the weekly draws. In addition, that provision does not give Cardinal the authority to unilaterally reduce the weekly draws. Rather it merely provides Cardinal with a cause of action to recover the difference between the weekly draws given and the actual amounts of commissions earned.

The second way to resolve the disposition of the accumulated commissions upon termination problem is by application of the law. IND. CODE 22-2-9-2(a) provides:

"Whenever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred: Provided, however, That this provision shall not apply to railroads

in the payment by them to their employees."

IND. CODE 22-2-9-1(b) defines wages:

"The term 'wages' means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece or *commission basis*, or in any other method of calculating such amount." (Emphasis added.)

Where no time is fixed for payment for work, the legal inference under the common law is that payment is to be made upon completion of the work. 17A C.J.S. *Contracts* Sec. 502(1)(d) (1963).

■ We hold that Cardinal's acts of failing to pay Papp's September 15, 1980, year-end settlement, cutting his weekly draw while he was still an employee, and refusing to pay him his April biannual 20% draw, which he properly requested while still employed, were breaches of his employment contract. In addition, we hold that Cardinal's refusal to pay Licocci his April biannual 20% draw which he properly requested while still employed, was a breach of his employment contract. Cardinal's failure to pay Licocci and Papp all of their remaining accumulated commissions upon termination as required by the statute was also a breach of the contract since the terms of the statute must be read into the contract. *See Kirmse v. City of Gary* (1944), 114 Ind.App. 558, 51 N.E.2d 883, *trans. denied; see also* 17 AM.JUR.2D *Contracts* Sec. 257 (1964); 17A C.J.S. *Contracts* Sec. 330 (1963). We hold that since these breaches by Cardinal occurred prior in time to any breach by either Licocci or Papp of their covenants not to compete, Cardinal can not now enforce those covenants.

Issue IV. *Double Recovery Under IND. CODE 22-2-5-1 and 2.*

Paragraph Five of the July 31, 1979, agreement constituted Licocci and Papp as independent contractors, and not as employees. However, the January 17, 1980, modification of the contract replaced all previous agreements concerning Licocci's

and Papp's commission draws, wages or other forms of compensation, and specifically deleted the original Paragraph Five. By the terms of the modification, Licocci and Papp would receive a weekly draw, later fixed at $800.00 and $1,200.00 respectively, from which federal income and social security taxes would be withheld, and Cardinal would contribute its required portion of the social security tax. Cardinal does not argue that Licocci and Papp were not employees. Rather, Cardinal argues that the above mentioned draws, both weekly and biannual, and the year-end settlements did not amount to salaries or wages within the purview of IND. CODE 22-2-5-1 and 2. Those sections provide as follows:

IND. CODE 22-2-5-1.

"Every person, firm, corporation or association, their trustees, lessees or receivers appointed by any court whatsoever doing business in this state shall pay each employee thereof at least semimonthly or biweekly, if requested, the amount due such employee and such payment shall be made in the lawful money of the United States or by negotiable check, draft or money order and any contract to the contrary shall be void. Such payment shall be made for all wages earned to a date not more than ten days prior to the date of such payment: Provided, That nothing herein shall be taken to prevent payments being made at shorter intervals than herein specified nor to repeal any law providing for such payments: Provided, however, That should any employee voluntarily leave his employment, either permanently or temporarily, such employer shall not be required to pay such employee any amount due such employee until the next usual and regular day for payment of wages, as established by such employer: Provided further, That in the event such employee leaves his employment voluntarily, and without his whereabouts or address being known to such employer, such employer shall not be subject to the provisions of IC 1971, 22-2-5-2 of this chapter, unless and until ten days

have elapsed, after such employee has made a demand for such wages due him, or has furnished such employer with his address, where such wages may be sent or forwarded to him."

IND. CODE 22-2-5-2.

"Every such person, firm, corporation or association who shall fail to make payment of wages to any such employee, as provided in section one [22-2-5-1] of this act, *shall*, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten per cent of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages, or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys." (Emphasis added.)

Licocci and Papp claim that the commissions are wages under those statutes and that they are therefore entitled to double recovery and attorney fees. Although IND. CODE 22-2-5-1 and 2 do not themselves define wages, other sections of the wages and hours statute do. As stated above, under IND. CODE 22-2-9-1(b), wages include commissions. IND. CODE 22-2-9-7, passed in 1939, provides for the repeal of all laws in conflict with IND. CODE 22-2-9-1 to 22-2-9-7. It concludes with the following proviso:

"Provided, however, That nothing herein shall be construed to repeal 'an act concerning labor; regulating payment of wages, providing for the recovery of liquidated damages and attorney fees.' Approved February 25, 1933."

IND. CODE 22-2-9-4(b) of the same chapter concludes with a further reference to IND. CODE 22-2-5-2:

"The provisions of IC 22-2-5-2 apply to civil actions initiated under this subsection by the attorney general."

For purposes of workmen's compensation under IND. CODE 22–3–6, the commissions of an outside salesman are wages. *Shelby Mfg. Co., Inc. v. Harris* (1942), 112 Ind.App. 627, 44 N.E.2d 315, *trans. denied; Pearson Co., Inc. v. McDermid* (1941), 109 Ind.App. 228, 31 N.E.2d 642, *trans. denied. Pearson* further held that a commission salesman was an employee, not a contractor.

The Indiana Employment Security Act specifically defines wages as including commissions. *See* IND. CODE 22–4–4–1 and 2. In addition, regulations promulgated pursuant to the Act provide that the term "wages" includes commissions, as is evidenced by 640 I.A.C. 1–17–17 (1984):

"Where an employee is allowed a drawing account against which are credited his earned commissions, and the commissions earned do not equal the amounts withdrawn, and the employee is required to account to the employer for amounts overdrawn, *the commissions earned, and not the amounts overdrawn, are considered wages subject to contribution.*"

(Emphasis added.)

Finally, Black's Law Dictionary states that "wages" are:

"A compensation given to a hired person for his or her services; the compensation agreed upon by a master to be paid to a servant, or any other person hired to do work or business for him. Every form of remuneration payable for a given period to an individual for personal services, including salaries, *commissions*, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him."

(Emphasis added and citations excluded.)

■ We are of the opinion that in the context here, commissions are wages within the meaning of IND. CODE 22–2–5–1 and 2, and that the trial court erred in finding to the contrary.

Cardinal finally asserts that even if IND. CODE 22–2–5 does apply to situations involving employer withheld accumulated commissions, we should recognize a "good faith dispute" exception to the statute's application. Cardinal contends that the exception should apply when the employer withholds final payment of the former employee's wages over a good faith dispute as to the actual amount of wages due. Cardinal cites several jurisdictions which have accepted this exception. *See Apache East, Inc. v. Wiegand* (1978), 119 Ariz. 308, 580 P.2d 769 (dispute regarding the exact amount of sales commissions due); *Bradshaw v. Joyco Enterprises, Inc.* (1973), 212 Kan. 206, 510 P.2d 174 (dispute regarding the amount of vacation pay, if any, owed to the employee); *Osipek v. Jansen* (1972), 210 Kan. 645, 504 P.2d 148 (dispute regarding the docking of pay for the acceptance by the employee of a customer's "bad check").

■ Though neither embracing nor rejecting the "good faith dispute" exception, we hold that IND. CODE 22–2–5–2 applies in the instant case; for even if the exception was good law in Indiana, it would not apply here. Cardinal's dispute with Licocci and Papp does not concern the amount of accumulated commissions due. In fact, Cardinal readily admits that the amounts claimed by Licocci and Papp, save for a relatively insignificant amount representing contested debits, are accurate figures. Rather, the dispute concerns compliance with a one-year sales prohibition contained in the covenants not to compete. In effect, Cardinal has held Licocci's and Papp's accumulated commissions "hostage" as bargaining chips in an effort to ensure their compliance with the prohibition. This IND. CODE 22–2–5 will not permit.

Given that their accumulated commissions are "wages" under IND. CODE 22–2–5, Licocci and Papp need only have demanded the balance due from their accumulated commissions accounts, or have furnished Cardinal with an address to which said commissions could be sent or forwarded. *See* IND. CODE 22–2–5–1. Licocci

and Papp in fact complied with both alternatives via their respective letters of resignation. Cardinal, having refused to comply with the statute by not relinquishing the accumulated commissions, is subject to the penalties provided in IND. CODE 22–2–5–2 as requested by Licocci and Papp.

For the above reasons, we reverse and remand this cause. The trial court is ordered to vacate the judgments in favor of Cardinal and against Licocci and Papp. It is further directed, in accordance with IND. CODE 22–2–5–2, to enter a judgment in favor of Licocci and Papp for double the wages found to be due, and to hold a hearing regarding attorney fees.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.