**Paul S. FARDY, Appellant,**

**v.**

**PHYSICIANS HEALTH REHABILITA-TION SERVICES, INC., and Charles J. Frahm, Appellees.**

No. 75A04–8707–CV–232.

Court of Appeals of Indiana, Fourth District.

Oct. 27, 1988.
Rehearing Denied Dec. 2, 1988.

Gregory S. Reising, Gary, for appellant.

David C. Jensen, John M. McCrum, Eichhorn, Eichhorn & Link, Hammond, for appellees.

MILLER, Judge.

Paul S. Fardy, M.D. brought suit against Physicians Health Rehabilitation Services, Inc. and Charles J. Frahm, M.D. personally to recover unpaid wages, unreimbursed expenses, and damages constituting wages which would have accrued over the remainder of his five-year term of employment pursuant to his contract. Physicians Health countersued alleging that Fardy, as director, had breached a fiduciary duty to the corporation by appropriating corporate clients.

The trial judge entered an amended judgment, after a bench trial, in favor of Fardy and against Physicians Health for $34,285.00 ($17,500 as unpaid wages and $16,785 as unreimbursed expenses and unmitigated damages under the employment contract). On the countersuit, Fardy was found to have breached his fiduciary duty, as a director, to Physicians Health. The trial judge gave Physicians Health credit for Fardy's earnings from competing organizations in mitigation of Fardy's damages of wages under the unexpired term of his employment contract.

Fardy appeals alleging the trial court erred in 1) not awarding him treble damages and reasonable attorney's fees for the unpaid wages earned before resignation; 2) not awarding him salary constituting the remainder of the term of his employment contract; and 3) finding Frahm free from personal liability.

We agree that Fardy is entitled to treble damages and reasonable attorney fees pursuant to statute for unpaid wages earned before his resignation. We reverse and remand to that extent. We affirm in all other respects.

## ISSUES

I. Whether Fardy is entitled to treble damages and reasonable attorney fees for unpaid wages pursuant to IND. CODE 22-2-5-1 *et. seq.?*

II. Whether the court erred in finding Fardy's employment contract damages mitigated?

III. Whether Dr. Frahm is personally liable for the debts of Physicians Health?

## FACTS

Drs. Fardy and Frahm entered into various agreements and formed a corporation, Physicians Health Rehabilitation Services, Inc., in May of 1984. Fardy, an expert in cardiac rehabilitation, agreed to provide professional services for salary and a 50% interest. Frahm agreed to loan Physicians Health $150,000.00 for a 50% interest and control of the board. Whether Frahm agreed to assume personal liability for corporate debts was in dispute.

Physicians Health experienced financial difficulties from the beginning and, despite additional capital injections, liabilities far exceeded assets by October 15, 1985. Physicians Health paid Fardy an amount smaller than he was entitled to throughout 1985, and failed to pay him at all in the months of September and October 1985. Fardy resigned employment with the corporation October 15, 1985. He remained executive director of Physicians Health.

In February of 1985—during his employment with Physicians Health—Fardy became employed as a consultant to another health care organization, Safety Harbor Spa of Florida. He remitted his earnings from Safety Spa to Physicians Health. After his resignation, he continued to work for Safety Spa and acquired additional cardiac rehabilitation consulting contracts. He was earning more from these competing organizations than he would have under his contract with Physicians Health by March of 1986.

Fardy brought this suit seeking the unpaid wages earned plus statutory penalties, unreimbursed expenses, and the balance of his salary under the five year contract.

## DECISION

*I. Whether Fardy is entitled to treble damages and reasonable attorney fees for his unpaid wages?*

■ Fardy asserts that he is entitled to an award three times the wrongfully withheld wages plus reasonable attorney fees pursuant to IND.CODE 22–2–5–1 *et seq.* The relevant statutes read as follows:

IND.CODE 22–2–5–1

"Every person, firm, corporation or association, their trustees, lessee or receivers appointed by any court whatsoever doing business in the state shall pay each employee thereof at least semi-monthly or bi-weekly, if requested, the amount due such employee and such payment shall be made in the lawful money of the United States or by negotiable check, draft or money order· and any contract to the contrary shall be void. Such payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of such payment: Provided, That nothing herein shall be taken to prevent payments being made at shorter intervals than herein specified nor to repeal any law providing for such payments: Provided, however, That should any employee voluntarily leave his employment, either permanently or temporarily, such employer shall not be required to pay such employee any amount due such employee until the next usual and regular day for payment of wages, as established by such employer: Provided, further, That in the event such employee leaves his employment voluntarily, and without his whereabouts or address being known to such employer, such employer shall not be subject to the provisions of IC 1971, 22–2–5–2 of this chapter, unless and until ten (10) days have elapsed, after such employee has made a demand for such wages due him, or has furnished such employer with his address, where such wages may be sent or forwarded to him."

IND.CODE 22–2–5–2 (Supp.1988)

"Every such person, firm, corporation or association who shall fail to make payments of wages to pay such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and to any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess costs in said cause a reasonable fee for the plaintiff's attorney or attorneys."

I.C. 22–2–5–1 *et seq.* is a penal statute which, being in derogation of the common law, must be strictly construed. A close examination makes clear that it is concerned with the time of payment of wages. Its thrust is to create a statutory requirement that wages be paid semi-monthly or bi-weekly if so requested by the employee. The remainder of the statute sets out when an employer need pay wages due after the employee terminates his employment. Thus, the statute is one designed to insure the regularity and frequency of wage payments. *Wilson v. Montgomery Ward & Co.* (D.C.Ind.1985), 610 F.Supp. 1035.

After reviewing Indiana authority, we have determined that section 1 promulgates three distinct regulations, the viola-

tion of any of which will trigger the punitive sanctions of section 2. The three regulations are as follows:

1. Employee's wages must be paid in money; *Vansickle v. Ferguson* (1889), 122 Ind. 450, 23 N.E. 858;

2. If requested, employers must pay employees semi-monthly or bi-weekly; *Standard Liquors v. Narcowich* (1951), 121 Ind.App. 600, 99 N.E.2d 268;

3. Employees, upon separation from employment, must be paid the amount due them at their next and usual payday. (unless their whereabouts are unknown); *Baesler's Super–Valu v. Indiana Com'r of Labor ex rel. Bender* (1986), Ind.App., 500 N.E.2d 243.

The facts of the case at bar appear to be quite similar to those in *Baesler's* where the employee made a demand for unpaid, accrued vacation benefits upon separation from her employer. We affirmed an award of treble damages plus attorney fees holding a demand for wages was not a requisite of the third regulation.

"Baesler's is, in essence, asking us to extend the strict requirements for a demand beyond the timing of payment to the situation where an employee voluntarily leaves employment and seeks unpaid accrued wages, governed by the latter portion of I.C. 22–2–5–1. This we decline to do. The legislature chose not to require a demand for payment upon voluntary termination, explicitly providing that payment not be due until the next usual and regular day for payment of wages." *Id.* at 500 N.E.2d 248.

In *Baesler's*, we noted the penalty provision, I.C. 22–2–5–2, was ambiguous with respect to whether it authorized double or treble damages. We refused to address this question because it had not been properly briefed. We did, however, state we would have had difficulty concluding treble damages were contrary to law observing:

"that the Indiana Supreme Court, considering the constitutionality of a statute containing the clause 'not exceeding double the amount of wages due', approved an award of a penalty of twice the amount of wages claimed, in addition to the award of unpaid wages. In that case, the court concluded that the statute was reasonable in that the amount of damages constituting exemplary damages allowed to be assessed could not exceed double the amount of wages due the employee, and thus, such an award of exemplary damages was neither excessive nor oppressive. *See Seelyville Coal & Mining v. McGlosson* (1906), 166 Ind. 561, 77 N.E. 1044, 1047." *Id.* 500 N.E.2d at 249.

We interpret I.C. 22–2–5–2 (Supp.1988) to authorize a maximum penalty equal to double the unpaid wages to be awarded *in addition thereto* the unpaid wages amounting to a total award of three times the wages due.[1] If the wages remain unpaid twenty days after the usual payday, treble damages attach. [20 (days) × 10% = 2 (penalty)] [2 (penalty) in addition to 1 (wages due) = 3 (treble damages)]

■ In the case at bar, the judge found the statute had not been violated because Fardy had never requested that his wages be paid semi-monthly or bi-weekly. This was erroneous because Physicians Health violated the third regulation (failure to pay wages due upon separation) and not the second regulation. No demand to be paid semi-monthly or bi-weekly is necessary to activate the penalty in the case where an employer fails to pay amounts due an employee *upon separation*. *Baesler's, supra.*

1. In the earlier case of *Licocci v. Cardinal Associates, Inc.* (1986), Ind.App., 492 N.E.2d 48 (*trans. denied*), salesmen who were paid *weekly* on a draw against commissions basis sued their employer under the statute for unpaid commissions earned before their separation from employment. We held the third regulation of the statute had been violated and awarded double damages, the amount the salesmen asked for. Our conclusion that the maximum penalty is twice the unpaid wages and is recoverable in addition to the unpaid wages is supported by the case of *Pope v. Wabash Valley Human Services, Inc.* (1986), Ind.App., 500 N.E.2d 209 in which we noted on page 212 in a footnote citing *Wilson, supra* as authority that I.C. 22–2–5–2 allows recovery "of any unpaid wages plus a maximum penalty of twice the amount of unpaid wages as well as legal fees and costs." *Id.* 610 F.Supp. at 1038.

Physicians Health asserts that the statute was intended to protect employees as Bender, the supermarket employee in *Baesler's*, and not a shareholder/director as Fardy. We agree, but have not been presented with a legal argument which would limit the statute's application. Fardy was never paid for wages accruing before his resignation. I.C. 22–2–5–1 *et. seq.* has been violated and the penalty has been invoked.

An award of reasonable attorney fees, including appellate attorney's fees, is activated without further showing upon the violation of I.C. 22–2–5–1 *et. seq. Vazquez v. Dulios* (1987), Ind.App., 505 N.E.2d 152. Because this issue is severable from the other issues litigated in this case and the statute authorizes attorney fees only for a narrow area of employment disputes, fairness requires that Fardy recover only those fees attributable to the collection of the unpaid wages earned before his resignation. Fardy has presented evidence and asserts that $15,000.00 is a reasonable award for attorney fees. But because no determination of the reasonableness of this amount has been made, we must remand this issue.

The trial judge awarded Fardy unpaid wages of $17,500.00. We reverse this portion of the total award and remand with instructions that judgment for $17,500 × 3 or $52,500.00 be entered with regard to this portion of Fardy's damages. Also, we remand for a determination of the reasonable measure of attorney fees, including appellate fees, to be awarded attributable to the recovery of Fardy's unpaid wages earned before resignation.

II. *Whether Fardy is entitled to salary constituting the balance of his five year contract?*

The trial judge found that Physicians Health's failure to pay Fardy his salary constituted a breach of contract. The judge found that this breach entitled Fardy, under the contract, to be paid to the end of his five year term. However, the court awarded Fardy an amount for the short period after his resignation until his earnings from other cardiac rehabilitation consulting work reached the amount he was to be paid under the employment contract.

The judge found in Physicians Health's favor on its counterclaim against Fardy. Fardy breached a fiduciary duty to Physicians Health by appropriating corporate clients while a director of the corporation. The judge awarded no damages based on Fardy's breach of his fiduciary duty to Physicians Health finding that:

"Fardy resigned his employment with Corporation on October 15, 1985, but continues to own forty percent of its stock and sit on its board of directors. Fardy, by taking over the Safety Harbor Spa contract in October, 1985, violated his fiduciary duty to the Corporation. Nevertheless, however, Fardy has used these funds to mitigate his damages and the Corporation has suffered no further damage."

"Even though Fardy had *no* right to appropriate Corporation clients as his own, the Court has given the Corporation credit for all sums paid to Fardy, without which the Corporation would have owed Fardy more salary; therefore, the Corporation has suffered no actual damage by reason of said breach."

Fardy has misunderstood the court's findings. Fardy argues the court committed error by finding the contract damages were mitigated by his earnings from other sources. He has assumed, erroneously, that the court followed the general rule that one suing on an employment contract has a duty to mitigate his damages. *Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269. Fardy asserts the general rule does not apply because his contract provided for liquidated damages.

Fardy's argument is irrelevant; the court did not use the general rule of contract mitigation in reaching its decision. The court reached an equivalent result by awarding Fardy all of his contract damages but setting them off against Physicians Health's successful countersuit. Fardy does not appeal the finding that he breached his fiduciary duty to Physicians Health.

He does not appeal the court's employment of setoff. Fardy's allegation of error is waived for failure to present a cogent argument pursuant to Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

III. *Whether Frahm is personally liable for Physicians Health debts?*

■ Fardy asserts that Frahm agreed to be personally liable for corporate debts pursuant to the following term contained in the AGREEMENT signed May 24, 1984 by Physicians Health, Frahm, and Fardy:

> "2.4 *Future Loans by Frahm.* Notwithstanding anything herein to the contrary, Frahm shall not be obligated to loan or contribute funds to the Corporation other than as provided in the loan agreement and Section 1.1 hereof, and should the Corporation have insufficient funds to meet its obligations, Frahm shall have personal liability to pay those obligations"

The court found this clause to be patently ambiguous and was willing to hear parole evidence. The parties stipulated that the clause was not ambiguous and that the judge should interpret its meaning as a matter of law without hearing parole evidence. We agree that the clause is ambiguous; we do not understand how a clause becomes unambiguous upon stipulation. However, we will interpret this clause, as did the trial court, by applying rules of contract interpretation.

■ Even in the case of the ambiguous contract, the question of meaning is one of law for the court if the ambiguity arises by reason of the language used and not because of extrinsic facts. *Clyde E. Williams & Associates, Inc. v. Boatman* (1978), 176 Ind.App. 430, 375 N.E.2d 1138; *Wilson v. Kauffman* (1973), 156 Ind.App. 307, 296 N.E.2d 432. In this case the court must "accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting." *R.R. Donnelley & Sons Co. v. Henry–Williams, Inc.* (1981), Ind. App., 422 N.E.2d 353, 356. The meaning of the contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or even paragraphs read alone. *Oser v. Commercial Union Ins. Companies* (1980), Ind.App., 409 N.E.2d 706. Thus, upon a review of all of the contract provisions, the court must avoid "a construction ... that is inequitable and gives an unfair or unreasonable advantage to one of the parties." *Komisarow v. Lansky* (1966), 139 Ind.App. 351, 219 N.E.2d 913, 916.

We hold that the court correctly applied the law in the present case. The court's well reasoned analysis and conclusion as set out in the judgment is as follows:

> "Plaintiff Fardy would have us read only the words, 'Should the Corporation have insufficient funds to meet its obligations, Frahm shall have personal liability to pay those obligations.' If those were the only words, no one could disagree with plaintiff's interpretation.

> Defendant Frahm wants us to read it as saying that if Frahm has not yet loaned the Corporation the full $150,000.00 then Frahm is personally liable for obligations of Corporation up to the $150,000.00 amount which could have been loaned. This is not readily seen by simply reading only Section 2.4.

> Some observations are made by the Court which are interesting to the Court:

> 1. All documents drawn on May 24, 1984, are very meticulous and usually take two documents or two different paragraphs to say the same thing.

> 2. No other document, paragraph, or line mentions personal liability of Frahm for anything.

> 3. Several documents and paragraphs say that Frahm has no obligation to loan any sums of money above $150,000.00.

> 4. A great attempt is made to limit Frahm's loan obligations to $150,000.00.

> 5. The 'LOAN AGREEMENT' designates specific occurrences when portions of the loan may be obtained by the Corporation from Frahm.

> 6. Section 2.4 of the 'AGREEMENT' is under Article 2 entitled '*Loans to the Corporation.*'

7. The sections under Article 2 are entitled as follows: 2.1 *Line of Credit;* 2.2 *Terms of Loans;* 2.3 *Other Loans;* and 2.4 *Future Loans by Frahm.*

8. Section 2.4 after saying Frahm has *no* obligation to loan beyond $150,000.00, further says, 'or *contribute funds* to the Corporation.'

9. All documents go to great length to specify how the Corporation shall repay the loans to Frahm, even to giving him control of three of the Board of Directors until the loans are paid.

10. There is no mention anywhere in Section 2.4 or any other document about repayment to Frahm of corporate obligations.

The practical effect of adopting Fardy's theory would completely nullify the original need for any loans to the Corporation and also nullify the attempt to limit the amount of said loans. The Corporation would need to make 'no loans; it would simply say to Frahm, 'Pay the bills and under our written contract we have no obligation to repay you.' Obviously, this was never intended.

Also, it is a bit illogical to believe a person would limit the amount of his loan obligation and then give an unlimited blanket guarantee to pay any debts for which the Corporation could obligate itself.

The Court agrees that the last portion of the sentence of said Section 2.4 is somewhat of a 'dangler'; however, the Court is thoroughly convinced that Frahm in-tended the total limit of his liability to be $150,000.00. The Court finds that the only logical interpretation of said Section 2.4 is that if the Corporation refuses to borrow the full $150,000.00 but had outstanding obligations, then in that event, Frahm is personally liable for those obligations up to the original amount of $150,000.00. This payment then would become a part of the total loan."

We believe this analysis is beyond reproach. We affirm; Frahm has no personal liability for corporate debts.

For all of the above reasons, we reverse and remand with instructions that judgment be entered in favor of Fardy against Physicians Health in the amount of $69,285.00.    ($17,500.00 $\times$ 3 + $16,785.00). We also instruct the trial court to hold a hearing to determine an award in favor of Fardy and against Physicians Health of reasonable attorney fees, including appellate fees, for the litigation attributable to the recovery of Fardy's unpaid wages earned before resignation.  (Issue I above) In all other respects, we affirm.

GARRARD, P.J., and NEAL, J., concur.