Carey D. HELMUTH, Appellant–Plaintiff,

v.

DISTANCE LEARNING SYSTEMS INDIANA, INC., Appellee–Defendant.

No. 49A05–0411–CV–588.

Court of Appeals of Indiana.

Nov. 30, 2005.

Jeffrey K. Eicher, Greenfield, for Appellant.

David A. Shelton, Mark J. Pizur, Tabbert Hahn Earnest & Weddle, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Carey Helmuth appeals from the trial court's judgment in his favor on his com-

plaint seeking payment of commissions and un-reimbursed employment expenses following the termination of his employment with Distance Learning Systems Indiana, Inc. ("Distance"). The trial court entered judgment for Helmuth in the amount of $540.48. Helmuth filed a motion to correct error and Distance filed a cross-motion to correct error. The trial court denied Helmuth's motion, and granted Distance's motion. Then, the trial court entered a final judgment for Helmuth in the amount of $270.84, which represented his un-reimbursed employment expenses. Helmuth appeals and presents the following issues for our review:

1. Whether the trial court erred when it concluded that Helmuth was not entitled to the disputed commissions.

2. Whether the trial court erred when it failed to award attorney's fees and statutory damages to Helmuth under the Indiana Wage Payment Statute.

Distance cross-appeals and presents the following issues for our review:

1. Whether the trial court erred when it refused to award Distance its costs incurred after Helmuth rejected Distance's settlement offer.

2. Whether Distance is entitled to an award of reasonable attorney's fees under Indiana Appellate Rule 66(E).

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Distance is an educational publishing company that publishes and markets educational materials to individuals to enable them to obtain college credits through ex-

ternal education. Helmuth began working as a sales representative for Distance in 2001. The parties did not reduce their employment agreement to writing. However, the evidence indicates that Helmuth's primary duty was to enroll students in Distance's education programs. For each student he enrolled, Distance paid Helmuth ten percent of the enrollment fee, up to a maximum of $250. After Helmuth enrolled a student, Distance paid him in three installments. Distance characterized these installments as a draw against future commissions because the enrolled students were free to cancel, default, or otherwise abandon their financial obligations. If a student stopped making payments, Distance assessed the sales representative who enrolled the student a chargeback. Essentially, that allowed Distance to reduce the sales representative's future installments on commissions in proportion to the amount that the student who cancelled did not pay.

Helmuth worked for Distance for approximately six months before he voluntarily resigned. After his resignation, Helmuth requested commissions he claimed he had earned and un-reimbursed travel expenses. Distance denied that he was entitled to commissions post-termination. Helmuth filed a complaint against Distance seeking unpaid commissions and un-reimbursed employment expenses. He also sought treble damages and attorney's fees for the non-payment of wages under Indiana Code Section 22–2–4–4.[1] Following a bench trial, the trial court entered a general judgment in favor of Helmuth for his employment expenses. Helmuth filed a motion to correct error, and Distance filed a cross-motion to correct error. The trial court granted Distance's cross-motion

---

1. In his motion to correct error and on appeal, Helmuth alleged that he was entitled to damages under Indiana Code Sections 22–2– 5–1 and 22–2–5–2. Thus, we address his claims under those sections, not Indiana Code Section 22–2–4–4.

to correct error and entered a final judgment in favor of Helmuth for $270.84. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Where a party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind.Ct.App.2002). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion but the trial court reached a different conclusion. *Id.* Where, as here, the trial court entered a general judgment, the judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *See Dierckman v. Area Planning Comm'n*, 752 N.E.2d 99, 103 (Ind.Ct.App. 2001), *trans. denied.* In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id.*

### Issue One: Commissions

Helmuth contends that the trial court's "extremely low judgment" is clearly erroneous and contrary to law. Appellant's Brief at 5. More specifically, Helmuth asserts that he did not forfeit commissions he had earned while employed by Distance when he voluntarily resigned because, according to our holding in *Vector Eng'g & Mfg. Corp. v. Pequet*, 431 N.E.2d 503 (Ind.Ct.App.1982), the "general rule is that a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer." *Vector*, 431 N.E.2d at 505. "The general rule may be altered by a written agreement by the parties or by the conduct of the parties which clearly demonstrates a different compensation scheme." *Id.*

Based on our holding in *Vector*, Helmuth claims that because his employment contract with Distance was "oral and not written," Distance "had no authority whatsoever to withhold [his] earned commissions after his employment was terminated." Appellant's Brief at 8. As noted above, the evidence indicates that when a salesperson successfully enrolled a student, Distance paid him up to $250 in three installments. If that student subsequently cancelled payments or defaulted on his loan, Distance would chargeback all but ten percent of the amount that the student actually paid. Distance provided its salespeople with commission payment summaries, which indicated whether a student was current on his payment obligation or whether he had defaulted. Further, Distance presented evidence that its salespeople were only entitled to commissions while employed by Distance.

Helmuth contends that Distance did not inform him that only current employees were entitled to commissions. He directs us to the general rule first outlined by this court in *Vector* that a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer. He claims that *Vector* controls and precludes Distance from withholding his commissions. We agree that *Vector* and its progeny control, but we cannot agree that Helmuth is entitled to commissions post-termination.

In *Vector*, we stated that parties may alter the general rule that an employee is entitled to commissions when the employer accepts the order if the parties agree in

writing or if the conduct of the parties clearly demonstrates a different compensation scheme. *See Vector*, 431 N.E.2d at 505. Helmuth contends that our decision in *Robinson v. Century Personnel, Inc.*, 678 N.E.2d 1268 (Ind.Ct.App.1997), *trans. denied*, modified the exception to the general rule in that now, "only a written agreement can cause an employee to forfeit commissions payable after the employee's termination." Appellant's Reply Brief at 3. In particular, Helmuth relies on the following language from our opinion in *Robinson:* "[The] general rule may be altered by a written agreement which clearly demonstrates a different compensation scheme." *Robinson*, 678 N.E.2d at 1270. He claims that because the words "or the conduct of the parties" were omitted from our opinion in *Robinson*, we modified the rule first announced in *Vector* so that the general rule may be altered only by a written agreement. But *Robinson* does not stand for the proposition that only a written agreement may alter the general rule. Rather, *Robinson* involved a written employment contract and our decision merely applied the rule to the particular facts in that dispute. In *Robinson*, there was no reason to examine the "conduct of the parties" because the parties had executed a written agreement. Further, in our subsequent opinion in *J Squared, Inc. v. Herndon*, 822 N.E.2d 633, 638 (Ind.Ct. App.2005), we reaffirmed the entire exception to the general rule from *Vector*, including the "conduct of the parties" language. Accordingly, Helmuth's reliance on *Robinson* and his insistence that he must prevail because the parties did not create a written agreement are misplaced.

While Distance does not contend that the parties executed a written agreement, it does maintain that the conduct of the parties established a compensation scheme that precluded Helmuth from receiving commissions after he ceased working for

Distance. Distance presented evidence that "future commissions are subject to chargeback," and "they are also forfeited as of the date a sales representative terminates his employment relationship." Appellee's Brief at 21. In particular, Ann Reiter, Vice President of Distance, testified that salespersons are informed that they are not entitled to commissions post-termination because "[Distance has] a four-year risk, and students can stop paying on their contracts at any point in time. And if they are not paying, then the commission hasn't truly been earned." Transcript at 163. Upon questioning by the court, Reiter stated:

> The chargeback occurs when the student has stopped paying for a period of a minimum of 60 days and the finance company can't do anything at that... you know, we're not getting any money. So, on the next pay period, then, we would calculate every bit of payment through the finance company, how much the student's paid, how much the [salesperson] was paid, and then [the salesperson is] allowed to retain ten percent of what the student has paid.

*Id.* at 172. In addition, Brenda Whitham, a bookkeeper for Distance, testified that Helmuth would have received future commissions "had he still been an employee of Distance." *Id.* at 191. When asked why Helmuth was not entitled to receive future commissions, Whitham testified, "[h]e terminated." *Id.*

Still, Helmuth maintains that the conduct of the parties shows that he was entitled to commissions post-termination. In particular, he notes that he was not subject to any chargebacks during his employment, nor did Distance inform him of the company's chargeback policy. But Helmuth was only employed at Distance for six months, and there is no evidence that any of his clients had defaulted during

that time. In addition, Helmuth alleged that the parties had a verbal contract that entitled him to commissions post-termination.

Although the lack of chargebacks during Helmuth's short tenure at Distance is of no assistance to us in determining the conduct of the parties, there is evidence showing that Distance informed its employees when they were hired of the chargeback policy and that they were entitled to commissions only during their employment. While Helmuth disputed that he was informed of these policies, we cannot reweigh the evidence or judge the credibility of witnesses on appeal. *See Dierckman*, 752 N.E.2d at 103. Thus, Helmuth's subsequent conduct in accepting employment with Distance indicates that he acquiesced in those terms of employment.

In sum, the evidence supports the trial court's determinations that the conduct of the parties established the validity of chargebacks because the commissions for enrolled students "were vested subject to a condition subsequent." *See Vector*, 431 N.E.2d at 505. In particular, Helmuth's right to commissions was divested when the students he enrolled cancelled payment or defaulted, or when he ceased working for Distance. *See id.* Thus, there is evidence to support the trial court's conclusion that the compensation scheme precluded Helmuth from receiving commissions after he resigned.

To reiterate, where the trial court enters a general judgment, the judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *Dierckman*, 752 N.E.2d at 103. In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Here, Helmuth essentially asks us to reweigh the evidence, which we cannot do. The trial court did not err

when it did not award Helmuth compensation for his unpaid commissions.

### Issue Two: Indiana Wage Payment Statute

Next, Helmuth contends that the trial court erred when it did not award him damages under the Indiana Wage Payment Statute for commissions Distance refused to pay him after he resigned. Because we conclude that the trial court did not err when it determined that Helmuth was not entitled to commissions after he resigned, we need not address that issue. Still, Helmuth alleges that the trial court's judgment is contrary to law because Distance admitted during trial that, due to an accounting oversight, it had failed to pay him $500 in commissions he had earned while employed by Distance. In particular, Helmuth alleges that Distance violated Indiana Code Sections 22–2–5–1 and 22–2–5–2, which entitled him to recover the amount owed, liquidated damages, and attorney's fees. We must agree.

■ Initially, we note that commissions are wages within the meaning of Indiana Code Section 22–2–5–2. *J Squared, Inc.*, 822 N.E.2d at 640 (citing *Licocci v. Cardinal Associates, Inc.*, 492 N.E.2d 48, 56 (Ind.Ct.App.1986)). And Indiana Code Section 22–2–5–1 provides:

(a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment. However, this subsection does not prevent payments being made at shorter intervals than specified in this subsection, nor repeal any law providing for payments at shorter intervals. However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer. If an employee leaves employment voluntarily, and without the employee's whereabouts or address being known to the employer, the employer is not subject to section 2 of this chapter until:

(1) ten (10) days have elapsed after the employee has made a demand for the wages due the employee; or

(2) the employee has furnished the employer with the employee's address where the wages may be sent or forwarded.

If an employer fails to make payment of wages in accordance with that section, then the employer:

as liquidated damages for such failure, [shall] pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

*St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele,* 766 N.E.2d 699, 702–03 (Ind. 2002) (quoting Ind.Code § 22–2–5–2). In *St. Vincent,* our supreme court concluded that the Wage Payment Statute "governs both the frequency and amount an employer must pay its employee." *Id.* at 700. Thus, Helmuth's claim for unpaid wages is clearly within the ambit of that statute.

Distance contends that Helmuth is not entitled to recover under Indiana Code Section 22–2–5–2 because he "has failed to make the requisite demand upon [Distance] for payment of the $500.00." Appellee's Brief at 25. Further, Distance alleges that Helmuth had to "make a request for bi-weekly or semi-monthly payment and that such request [must] have been made 'prior to or concurrent with the period of employment' at issue and not after a wage dispute has arisen." *Id.* (citing *Pope v. Wabash Valley Human Services, Inc.,* 500 N.E.2d 209, 212 (Ind. Ct.App.1986), *trans. denied*). But in *Fardy v. Physicians Health Rehabilitation Servs., Inc.,* 529 N.E.2d 879 (Ind.Ct.App. 1988), this court, after reviewing Indiana authority, noted that Section 22–2–5–1 promulgates three distinct regulations, the violation of any of which will trigger the punitive sanctions of Section 22–2–5–2. *Fardy,* 529 N.E.2d at 881–82. The three regulations are as follows:

(1) Employee's wages must be paid in money; [or]

(2) If requested, employers must pay employees semi-monthly or bi-weekly; [or]

(3) Employees, upon separation from employment, must be paid the amount due them at their next and usual payday.

*Id.* (internal citations omitted). In that case, we held that the trial court erred when it found that the statute had not been violated because Fardy had never

requested that his wages be paid semi-monthly or bi-weekly. *See id.* at 882. We explained that "[n]o demand to be paid semi-monthly or bi-weekly is necessary to activate the penalty in the case where an employer fails to pay amounts due an employee upon separation." *Id.*

■ Here, Distance mistakenly claims that Helmuth is not entitled to recover under the Wage Payment Statute because he did not "demand" payment for the $500 Distance admitted it owed him. Appellee's Brief at 25. But Section 22–2–5–1 does not require that an employee demand unpaid wages in order to invoke Section 22–2–5–2. Rather, Section 22–2–5–1 states that if an employee leaves employment voluntarily *without providing his whereabouts or an address with the employer,* the penalty provision of Section 22–2–5–2 does not apply until ten days have elapsed after the employee has made a demand for the wages due. *See* Ind.Code § 22–2–5–1(1). Here, there is no suggestion that Helmuth failed to provide Distance with his address. Thus, that statute does not apply. And, regardless, Helmuth did make a demand for his unpaid wages in a letter dated October 11, 2001.

■ Distance also claims that Helmuth did not request an increase in the amount of damages awarded him in light of the information regarding the $500 shortfall. But in Helmuth's motion to correct error, he specifically requested that the trial court award him "an additional $500.00 in commissions" that Distance admitted it owed him. Appellant's App. at 14. Thus, Helmuth is entitled to $500 in unpaid commissions plus liquidated damages under the Wage Payment Statute. We have recognized that "an award of reasonable attorney's fees, including appellate attorney's fees, is activated without further showing upon the · violation of Indiana Code Section 22–2–5–1." *Fardy,* 529 N.E.2d at 883. Because the statute authorizes attorney's fees only for a narrow area of employment disputes, fairness requires that Helmuth recover only those fees attributable to the collection of unpaid wages earned before his resignation. *See id.* Therefore, we reverse and remand with instructions that the trial court enter judgment in favor of Helmuth for this portion of his damages. We also remand for a determination of the reasonable measure of attorney's fees.

## CROSS–APPEAL

### Issue One: Costs

■ Next, Distance contends that it is entitled to the costs it incurred in defending this action after it offered to settle Helmuth's claim. On October 20, 2003, Distance offered Helmuth $2,040.52 to settle his claim, but Helmuth rejected that offer. Distance claims that Trial Rule 68· allows it to recover the costs it incurred after it offered to settle Helmuth's claim. But Helmuth alleges that Distance is not entitled to an award of costs pursuant to Trial Rule 68 because Distance stated that its offer to settle was made under Indiana Code Section 34–50–1–6(a).[2] In response, Distance asserts that the designation of its settlement offer is not controlling and, therefore, Trial Rule 68 authorizes recovery of its costs. Again, we must agree.

Distance's settlement offer warned Helmuth that if he refused the company's offer, it would seek "an award of attorney's fees, costs and expenses pursuant to Indiana Code Section 34–50–1–6(a)." Exhibit 9. But that statement does not pre-

---

**2.** Indiana Code Section 34–50–1–1(a) provides, "This chapter applies only to actions in tort." Because the present action is not a tort case, Indiana Code Section 34–50–1–6(a) is not applicable.

clude Distance from recovering costs under Trial Rule 68. Indeed, the language of Trial Rule 68 is mandatory. "If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree *must* pay the costs incurred after the making of the offer." Ind. T.R. 68 (emphasis added); *see also Ingram v. Key*, 594 N.E.2d 477, 478 (Ind.Ct.App.1992), *aff'd*, 600 N.E.2d 95 (Ind.1992) (per curiam).

The term "costs" has the same meaning in Indiana Trial Rule 68 as in Indiana Trial Rule 54(D):

> "Costs" is a term of art with a specific legal meaning, and we must presume that it was used consistently absent evidence of a contrary intent by the drafters. [The defendant] does not point to anything on the face of Trial Rule 68 to indicate that the drafters intended a more expansive definition of "costs" than its traditional meaning as embodied in Trial Rule 54(D) and [Indiana Code Section] 34–1–32–1(a).

*Ingram*, 594 N.E.2d at 479. The term "costs" must be given its accepted meaning, which does not include litigation expenses. *Van Winkle v. Nash*, 761 N.E.2d 856, 861 (Ind.Ct.App.2002). Thus, we remand to the trial court with instructions to determine the costs Distance incurred after Helmuth rejected its settlement offer.[3]

### Issue Two: Attorney's Fees

Finally, Distance claims that it is entitled to an award of reasonable appellate attorney's fees. In particular, Distance alleges that it is entitled to attorney's fees under Indiana Appellate Rule

66(E) because Helmuth has exhibited substantive and procedural bad faith. We cannot agree.

Indiana Appellate Rule 66(E) states: "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." Our discretion to award attorney fees under Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Manous, LLC v. Manousogianakis*, 824 N.E.2d 756, 767 (Ind.Ct.App.2005). Additionally, while Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Id.* A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Id.* at 768.

Indiana appellate courts have formally categorized claims for appellate attorney fees into "procedural" and "substantive" bad faith claims. *Id.* Here, Distance argues both procedural and substantive bad faith. Procedural bad faith occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner

---

3. Distance does not state what its costs were. And our review of the statute and relevant case law reveals that litigation expenses are not recoverable costs under Trial Rule 68. *See Missi v. CCC Custom Kitchens, Inc.*, 731 N.E.2d 1037, 1039 (Ind.Ct.App.2000) (holding that the trial court erred when it awarded Westlaw charges, mountings and printing costs for exhibits, camera, film, and developing costs for pictures, printing costs for exhibits, and copying expenses for trial as recoverable costs under Trial Rule 68). In fact, we have stated that "costs . . . include only filing fees and statutory witness fees unless otherwise provided." *Van Winkle*, 761 N.E.2d at 862.

calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id.* Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. *Id.* (citing *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind.Ct.App.2003)).

Here, Distance argues that it is entitled to attorney's fees because Helmuth failed "to comply with the Appellate Rules" and included improper material throughout his Statement of Facts and Argument. Appellee's Brief at 30. But to the extent that Helmuth did not strictly comply with our procedural rules, we conclude that those flaws do not rise to the level of egregiousness punishable under Appellate Rule 66(E). *See Manous, LLC,* 824 N.E.2d at 768 (citing *Ind. CPA Soc'y, Inc. v. GoMembers, Inc.,* 777 N.E.2d 747, 753 (Ind.Ct. App.2002) (finding shortcomings in party's brief were not "so flagrant or significant as to taint the appeal as vexatious")). Helmuth's brief does not misstate relevant facts and was not written in a "manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *See id.* Therefore, Distance's procedural bad faith claim must fail.

To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Id.* Distance claims that "Helmuth has exhibited substantive bad faith by relying on the same arguments that the trial court found groundless to justify his repeated claim for future commissions." Appellee's Brief at 30. Because Helmuth supported his challenge with pertinent legal authority and made cogent arguments, and because he prevailed, in part, on his wage payment claim, we do not find his contentions utterly devoid of all plausibility. *See Taflinger*

*Farm v. Uhl,* 815 N.E.2d 1015, 1019 (Ind. Ct.App.2004). Thus, we conclude that an award of appellate attorney's fees is not warranted.

### Conclusion

We affirm the trial court's decision to deny Helmuth compensation for his unpaid commissions because the conduct of the parties reveals that they had a compensation scheme that precluded Helmuth from receiving commissions after he resigned. However, we remand to the trial court with instructions to award Helmuth $500 in unpaid commissions Distance admitted it owed him, plus liquidated damages, and attorneys' fees attributable to the collection of unpaid wages earned before his resignation. Further, we instruct the trial court to determine and award Distance the costs it incurred after Helmuth rejected its settlement offer. Finally, we reject Distance's claim for an award of appellate attorney's fees.

Affirmed in part, reversed in part, and remanded with instructions.

BARNES, J., and CRONE, J., concur.