**Gerald M. DIERCKMAN and Sandy Dierckman, Appellants–Defendants,**

v.

**AREA PLANNING COMMISSION OF FRANKLIN COUNTY, INDIANA, Appellee Plaintiff.**

No. 24A01–0009–CV–320.

Court of Appeals of Indiana.

July 11, 2001.

David E. Dearing, Indianapolis, IN, Attorney for Appellants.

Troy C. Werner, Wilhelm, Wilhelm–Waggoner & Werner, Brookville, IN, Attorney for Appellee.

### OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Gerald M. Dierckman and Sandy Dierckman (collectively Dierckmans) appeal from the trial court's judgment finding them in violation of the Franklin County Area Zoning Code (Zoning Code), which prohibits the discharge of pollutants and the operation of a junkyard in a secondary agricultural zone. The trial court ordered them to pay $150,000 in fines, and issued a mandatory injunction requiring them to remove the offending debris from their land.

We affirm.

### ISSUES

The Dierckmans present several issues for our consideration, which we restate as follows:

1. Whether the evidence was sufficient to establish that the Dierckmans violated the Zoning Code.

2. Whether the trial court erred when it determined that the Dierckmans were operating a junkyard in violation of the Zoning Code and issued a mandatory injunction ordering them to remove the offending debris from their land.

3. Whether the trial court erred when it fined the Dierckmans $150,000.

## FACTS AND PROCEDURAL HISTORY

The Dierckmans own and occupy a farm located in Franklin County that is zoned for secondary agriculture. In late 1999, the Dierckmans contracted with the City of Batesville to remove building debris from the site of a demolished furniture factory. The debris included, among other things, sizeable amounts of wood, metal, and masonry. The Dierckmans hauled the debris to their farm and dumped it in a hollow. In February 2000, the Dierckmans set fire to the debris causing smoke, ash, and fumes to spread into nearby residential areas.

After receiving complaints from neighboring landowners, the Franklin County Area Planning Commission (Commission) filed a complaint against the Dierckmans alleging that they had discharged air pollutants from their property and were operating a junkyard in violation of Zoning Code provisions 80.06(F) and 80.47(75), respectively. The Commission sought a permanent restraining order prohibiting the Dierckmans from further discharging air pollutants and a mandatory injunction requiring them to remove the offending debris. It also requested that the Dierckmans be fined $2,500 for each day they were not in compliance with the Zoning Code.

At a hearing on May 11, 2000, the trial court heard testimony that over a period of several weeks, beginning around the middle of February, smoke, falling ash, and foul odors from the Dierckmans' fire permeated neighboring property and houses. On one occasion, the falling ash was so heavy it appeared to be snowing, and the smoke caused one neighbor's eyes to burn. Gerald Dierckman conceded that he set fire to the debris and that it was not yet completely extinguished. Following the presentation of evidence, the trial court specifically found that the Dierckmans had violated Zoning Code Section 80.06(F) pertaining to the discharge of air pollutants, and the trial court entered a permanent restraining order requiring the Dierckmans to cease hauling demolition material onto their property that did not conform to Zoning Code requirements.

At the dispositional hearing on June 21, 2000, neighboring landowners testified that the Dierckmans had not yet put out the fire and that they could still smell smoke in their neighborhood. The trial court therefore issued a mandatory injunction requiring the Dierckmans to completely excavate that area of their real estate where they disposed of all the debris and remove all materials other than dirt by August 23, 2000.

At the final hearing on August 24, 2000, neither side could confirm whether the Dierckmans had complied with the trial court's order to remove the debris. The trial court then ordered the Dierckmans to pay $150,000 in fines—$2,500 for each of the sixty days it determined that the Dierckmans had allowed smoke, debris, and fumes to penetrate nearby residential areas in violation of the Zoning Code. This appeal followed.

## DISCUSSION AND DECISION

### A. Sufficiency of the Evidence

The Dierckmans initially argue that the Commission failed to present sufficient

evidence to establish a violation of the Zoning Code. Specifically, the Dierckmans allege that the Commission failed to establish that the smoke emitted from the Dierckmans' property was detrimental to health, animals, vegetation or property, or conflicts with public air quality standards in violation of Zoning Code Section 80.06(F)

■■■ Initially, we note that neither party requested special findings of fact under Trial Rule 52(A), nor did the trial court enter such findings sua sponte. Thus, we review the decision of the trial court under the general judgment standard. *See Shelby Eng'g Co., Inc. v. Action Steel Supply, Inc.*, 707 N.E.2d 1026, 1027 (Ind.Ct.App.1999). A general judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *Id.* In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses. Rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id.*

■■■ Section 80.06(F) of the Zoning Code provides:

No use shall discharge across the lot lines fly ash, dust, smoke, vapors, noxious, toxic or corrosive matter, or other air pollutants in such concentration as to be *detrimental to health, animals, vegetation or property, or conflict with public air quality standards.*

(Emphasis added). Undefined words in a statute are given their plain, ordinary and usual meaning. *State v. DMZ*, 674 N.E.2d 585, 588 (Ind.Ct.App.1996). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *DMZ*, 674 N.E.2d at 588. Detrimental is defined as: Causing

damage or harm; injurious. THE AMERICAN HERITAGE DICTIONARY 510 (3rd ed. 1996). Three neighbors testified that they endured smoke and foul odors. One neighbor, Kathy Lamb, testified that the smoke caused her eyes to burn on one occasion, and on another occasion the ash was so thick it appeared to be snowing. But none of the neighbors said they suffered any harm or injury to their health. Further, the Commission offered no other evidence that the smoke or fumes were harmful or injurious, and it failed to demonstrate that foul odors and burning eyes alone are detrimental to health within the meaning of the Zoning Code. In addition, the Commission neither presented evidence that the burning debris caused harm to animals, vegetation, or property, nor did it show that the Dierckmans' usage of their property conflicted with public air quality standards. *See* Zoning Code § 80.06(F). We thus agree with the Dierckmans that the Commission failed to establish a violation under Zoning Code Section 80.06(F).

■■■ However, that is not the end of our inquiry. As we stated earlier, we will affirm the trial court's judgment if it can be sustained on any legal theory consistent with the evidence. *Shelby Eng'g. Co.*, 707 N.E.2d at 1027. Zoning Code Section 80.06(E) provides: No use shall emit across the lot lines malodorous gas or matter in such quantity as to readily be detectable at any point along the lot lines.[1] During the May 2000 hearing, neighbor Kathy Lamb testified that, beginning around February 18, 2000, she noticed smoke settling around her house and that it produced a nasty smell. Record at 171. Lamb and her husband sought out the source of the smoke and discovered a burning pile of debris about 600 yards

1. This section was introduced and admitted as part of plaintiff's exhibit three.

away on the Dierckmans' property. Lamb said the burning pile of debris produced falling ash around her house, and it caused her house to smell like smoke. Lamb further noted that the smoke caused her eyes to burn. Another neighbor, Kim Taylor, testified that she lived about four houses down from Lamb, and that smoke from the Dierckmans' property surrounded her house and carried an odor that varied from wood burning to a sour smell that just took your breath. Record at 182. In addition, Donald Huffmaster, who lived about half-a-mile from the Dierckmans' property, said he could see smoke filtering through the trees around his property, and it smelled like burning wet leaves in the fall. Record at 164. Both Lamb and Taylor testified that they could still smell smoke from their property at the time of the hearing, and Gerald Dierckman conceded that he was not sure the fire was a hundred percent ... out. Record at 206. At a subsequent hearing on June 11, 2000, Lamb and Taylor again testified that they could smell the Dierckmans' fire from their property as recently as a week or two before the hearing. During cross-examination, Sandy Dierckman admitted that the fire was big and the smoke it produced was very noxious. Record at 252–53.

Based on this evidence, the trial court could well have concluded that the Dierckmans violated Zoning Code Section 80.06(E) since the malodorous gas or matter was detectable on property well beyond the Dierckmans' farm from mid February to mid June, a period of approx-

imately four months.[2] Accordingly, the trial court did not err when it determined that the Dierckmans had violated the Zoning Code.

## B. Mandatory Injunction

■ The Dierckmans next assert that the trial court erred when it found that they were operating a junkyard in violation of the Zoning Code and issued a mandatory injunction ordering them to remove the debris comprising the junkyard from their property. We cannot agree.

■ The grant or denial of an injunction is discretionary, and we will not reverse unless the trial court's action was arbitrary or constituted a clear abuse of discretion. *Indiana High School Athletic Ass'n, Inc. v. Durham*, 748 N.E.2d 404, 412 (Ind.Ct.App.2001). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law. *Id.* A party seeking an injunction for a zoning violation must prove: (1) the existence of a valid ordinance and (2) a violation of that ordinance. *Harbour Town Assoc., Ltd. v. City of Noblesville*, 540 N.E.2d 1283, 1284 (Ind.Ct.App.1989).

Here, the trial court issued the injunction after finding that the Dierckmans' debris pile amounted to a junkyard in violation of Zoning Code Section 80.47(75). That section provides:

Any place at which personal property is or may be salvaged for reuse, resale, or reduction or similar disposition and is

---

**2.** The Dierckmans also argue that the evidence was insufficient to show that they violated the Zoning Code for a period of sixty days. However, this argument is based on the assumption that the Commission failed to prove that tangible ash, dust, smoke, vapors, noxious, toxic or corrosive matter, or other air pollutants crossed the Dierckmans' property line pursuant to Zoning Code Section

80.06(F). Because the trial court could have based its finding of violation on subsection (E) of the same provision, which requires only that malodorous gas be detectible along property lines, we need not address this argument. Indeed, the Dierckmans do not dispute that the neighbors could smell smoke well beyond sixty-days.

owned, possessed, collected, accumulated, dismantled, or assorted, including, but not limited to, used or salvage base metal or metals, their compounds or combinations, used or salvaged rope, bags, paper, rags, glass, rubber, lumber, millwork, brick and similar property except animal matter; and used motor vehicles, machinery or equipment which is used, owned[,] or possessed for the purpose of wrecking or salvaging parts therefrom.[3]

■■■■ At the hearings, the Dierckmans admitted that they hauled truckloads of demolition debris onto their property and set it ablaze. Gerald testified that two-thirds of the material consisted of concrete and bricks, with most of the other contents being wood waste and metal materials. Record at 129. In addition, Gerald admitted that he had planned to crush some of the red bricks for ... landscaping purposes and later conceded that he loaded a semi-trailer of scrap metal from the debris, hauled it to Richmond, and sold it. Record at 128, 212. Additionally, the Dierckmans introduced inspection reports prepared by the Indiana Department of Environmental Management recounting the Dierckmans' intention to remove the majority of red bricks, metal[,] and steel items for salvaging purposes. Report and Comments of Agricultural and Solid Waste Compliance at 2. This evidence supports a finding that the Dierckmans were operating a junkyard in violation of Zoning Code

Section 80.47(75). Because the Dierckmans violated the ordinance, the trial court's issuance of a mandatory injunction requiring them to remove the offending material from their land was not a clear abuse of discretion.[4]

## C. The $150,000 Fine

■■■ Finally, the Dierckmans contend that the trial court erred when it ordered them to pay $150,000 in fines. In particular, the Dierckmans argue that Zoning Code Section 80.99, which authorizes fines in excess of $2,500, conflicts with Indiana Code Section 36–1–3–8(a)(10), which limits the fine for ordinance violations to $2,500 per violation. As such, they posit that the Indiana Code provision should control and that the trial court should have imposed a $2,500 fine. We cannot agree.

■■■ The interpretation of a statute is a question of law reserved for the courts. *State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct.App.2000), *trans. denied.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* Moreover, it is well settled that we are to apply the rules of statutory construction when construing an ordinance. *Burrell v. Lake County Plan Comm'n.,* 624 N.E.2d 526, 529 (Ind.Ct.

3. Larry Franzman, Executive Director for the Commission, testified that the Dierckmans' property was zoned A–2, which is ... secondary agriculture. Record at 148. The Zoning Code prohibits owners from operating a junkyard on such property.

4. The Dierckmans also allege that they were caught by surprise at the June 2000 hearing when the trial court ordered them to excavate the demolition debris because the court, following the May 2000 hearing, had only enjoined them from further violating the Zoning

Code and did not order contemporaneous excavation of the site. However, a trial court may reconsider an order or ruling if the action remains in fieri, or pending resolution. *Pond v. Pond,* 700 N.E.2d 1130, 1135 (Ind. 1998). The Dierckmans had notice that the court might impose such a remedy because, in its complaint, the Commission specifically asked the court to order the removal of all debris set forth in Section 80.47(75) of the [Zoning Code]. Record at 12.

App.1993). Although it is true that in order to be valid an ordinance must be precise, definite, and certain in expression, it is equally true that we will not construe an ordinance so as to defeat its purpose if it is sufficiently definite to be understood with reasonable certainty. *Id.* When two statutes exist on the same subject, it is our duty to give effect to both, if possible. *Payne, President et al. v. Buchanan et al.*, 238 Ind. 231, 148 N.E.2d 537, 545 (1958). Zoning Code Section 80.99 reads, in relevant part:

> Any person or corporation in violation of Chapter 80 may be punished subject to the provisions of I.C. 36–1–3–8, specifically: a fine of not more than Two Thousand Five Hundred Dollars ($2,500.00) for an ordinance violation. *Each day that the violation continued shall constitute a separate offense.*

(Emphasis added). In turn, Indiana Code Section 36–1–3–8(a)(10) provides that a town, municipality, or township does not have the power to prescribe a penalty of ... [m]ore than two thousand five hundred dollars ($2,500) for such an ordinance violation. Contrary to the Dierckmans' claim,

these two provisions are not in conflict. Rather, Indiana Code Section 36–1–3–8(a)(10) prohibits Franklin County from charging more than $2,500 for an ordinance violation. The provision does not make $2,500 the maximum aggregate penalty or otherwise limit a county's power to fine an offender for each of multiple offenses. Accordingly, Zoning Code Section 80.99, which designates each day a violation continues as a separate offense, does not conflict with the Indiana Code's requirement that an offender be fined no more than $2,500 per violation.[5] The trial court therefore did not err when it imposed a fine of $2,500 for each day that the Dierckmans violated the ordinance.[6]

Affirmed.

DARDEN, J., and BARNES, J., concur.

---

5. We note that the Dierckmans made about $25,000 for their efforts in hauling away and disposing of the demolition debris. To hold that $2,500 is the maximum possible fine for the ordinance violation at issue would undermine the deterrent effect of the ordinance and encourage would-be offenders to ignore the ordinance and pay the fine as a cost of doing business should someone later complain about their activities.

6. In the alternative, the Dierckmans posit that even if the trial court correctly interpreted Zoning Code Section 80.99 and Indiana Code Section 36–1–3–8(a)(10), it nonetheless erred when it imposed the fine. Specifically, the Dierckmans argue that because the fine levied was fifteen times the amount requested by the [Commission] ... [and that] [i]t is extremely unusual for a court to apply more severe sanctions than requested by the regulatory body[,] the trial court abused its discretion

when it imposed a $150,000 fine. Brief of Appellant at 16. The Dierckmans, however, provide us with no authority that arguably supports their assertion. Our former appellate rules require that each allegation of error be accompanied by an argument that contains the contentions of the appellant, the reasons in support of the contentions, citations to the authorities relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review. *Paulson v. Centier Bank*, 704 N.E.2d 482, 493, n. 1 (Ind.Ct.App.1998) (quoting former Ind. Appellate Rule 8.3(A)(7)), *trans. denied.* Assertions of error unsupported by either cogent argument or citation to authority will result in waiver of any error on review. *Pasha v. State*, 524 N.E.2d 310, 314 (Ind.1988). Accordingly, we decline to address this contention.