# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 26 2017, 7:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.D.Z.,<br>*Appellant,*<br><br>v.<br><br>J.M.Z.,<br>*Appellee.* | September 26, 2017<br><br>Court of Appeals Case No.<br>51A01-1702-DR-226<br><br>Appeal from the Martin Circuit Court<br><br>The Honorable Lynne E. Ellis, Judge<br><br>Trial Court Cause No.<br>51C01-1309-DR-233 |

**Bailey, Judge.**

# Case Summary

J.D.Z. ("Father") appeals the trial court's denial of his motion to modify custody of the parties' minor child, H.Z. ("the Child"). We affirm.

# Issues

Father raises two issues on appeal, namely:

I.  Whether the trial court erred in denying his motion to modify custody.

II.  Whether Father was denied a fair and impartial hearing because of the trial court's bias against him.

# Facts and Procedural History

Father and J.M.Z. ("Mother") were married, and their four-year-old daughter, the Child, was born during the parties' marriage. The parties' marriage was dissolved on January 27, 2014, and Mother was awarded sole physical and legal custody of the Child. The dissolution decree ordered that Father was not allowed to exercise visitation with the Child but he could "apply or re-petition the court" on that issue. Appellant's App. at 15. At some point thereafter,[1] Mother moved with her boyfriend, Elvin Vargas ("Vargas"), and the Child to

---

[1] The Chronological Case Summary (CCS) notes "Change of address filed 08-13-2014. Copy to Counsel." Appellant's App. at 7. However, it does not indicate which party filed the change of address or what the new address was. There is no other evidence in the record regarding the exact date when Mother moved to Cromwell.

Cromwell in Noble County, Indiana. Father remained in Loogootee in Martin County.

[4] On October 7, 2015, the parties entered into an agreed order under which parenting time with the Child was modified to allow Mother to have care and control of the Child for two (2) weeks and allow Father to have care and control of the Child the following week, with the parties maintaining that alternating two-week/one-week schedule until further order of the court.

[5] On August 11, 2016, Father filed a petition for emergency modification of custody of the Child in which he contended that Mother, Vargas, and the Child were living with a man named Juan Vargas ("Juan") who had been arrested for child molesting and was awaiting trial. The petition also alleged that the Child had "been seen playing outside by herself," and that there were registered sex offenders living close to the Child's home where she played outside unsupervised. Appellant's App. at 21. The petition sought sole temporary physical custody of the Child.

[6] On January 4, 2017, the trial court held a hearing on Father's petition to modify custody. At the hearing, Father testified that Mother moves frequently, although he admitted that she had been residing in her current home for "a year and a half, two years." Tr. at 27. Father testified that he did not know that Mother was moving with the Child to Cromwell until "two days before they were leaving." *Id*. at 19. He testified that he was required to do most of the transportation for his parenting time with the Child. Father testified that he

became worried for the Child's safety because he learned that the Child "was seen multiple times out in the yard [of her Mother's house] playing by herself," and that there were child molesters living within 500 feet of the house. *Id*. at 16. He also testified that he had learned "on Facebook" that Juan was arrested for child molesting, *Id*. at 30, and that he believed Juan was living in Mother's home "for awhile." *Id*. at 17.

[7] Michael Budez ("Budez"), a private investigator, testified that Father had hired him to find out Mother's address, with whom she was living, what the living conditions were like at her home, and what activities she and Vargas "were involved with." *Id*. at 33. Budez did a background check on Juan and discovered that Juan had pending child molesting charges. Budez testified that, while surveilling Mother's home on July 22, 2016, he saw the Child "by herself at the end of the driveway." *Id*. at 34. Budez testified he conducted a search of the Indiana Sex Offender Registry and discovered that there were four sex offenders living within a quarter mile of Mother's home. He also testified that the outside of Mother's home was "unkempt," with one window covered by cardboard and dog feces on the front porch. *Id*. at 36.

[8] Vargas testified that he had never allowed the Child or his three other children outside of the home without adult supervision. He testified that no one lived at his and Mother's house in Cromwell besides them and the children. He stated that Mother had always informed Father before she moved anywhere with the Child. He testified that the family's puppy did defecate on the front porch, but

that Vargas cleaned up the feces every day. In response to Father's questioning, Vargas stated that he was not a United States citizen.

[9] On March 7, 2017, the trial court denied the petition to modify custody because it found that Father had failed to prove that there had been a substantial change in circumstances. Specifically, the trial court stated that Father had not provided evidence that Mother's home was unfit for the Child or that the Child was in danger. Tr. at 93, 97. However, the trial court stated that it was in the Child's best interest to modify the parenting time order to give Father an additional week with the Child. Therefore, the trial court ordered that Mother and Father "shall alternate two (2) week periods of time with their child" until the Child begins regular school activities, at which time the parties were "encouraged to work out a new parenting time arrangement." Appellant's App. at 12-13. This appeal ensued.

# Discussion and Decision

## Custody Modification

[10] Father contends that the trial court erred in denying his petition to modify custody. Mother has not filed an appellee's brief. Therefore, "the judgment may be reversed if the appellant's brief presents a prima facie case of error." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006). Prima facie error is error at first sight, on first appearance, or on the face of it. *Id.*

[11] Father had the burden of proof on his petition to modify custody.

> Where a party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind. Ct. App. 2002). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion but the trial court reached a different conclusion. *Id*.

*Helmuth v. Distance Learning Sys. Ind., Inc.*, 837 N.E.2d 1085, 1089 (Ind. Ct. App. 2005). And when the trial court does not make special findings, as the court did not here,[2] we review its decision as a general judgment. That is,

> the judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *See Dierckman v. Area Planning Comm'n*, 752 N.E.2d 99, 103 (Ind. Ct. App. 2001*), trans. denied*. In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses. *Id*. Rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id*.

*Id*.

[12] Indiana Code Section 31-17-2-21 governs the modification of a child custody decree, and states in relevant part:

---

[2] In an action to modify custody, a trial court is not required to make special findings unless requested by a party. *R.A.P. v. C.D.T. (In re Paternity of J.T.)*, 988 N.E.2d 398, 400 (Ind. Ct. App. 2013). Here, neither party requested special findings.

(a) The court may not modify a child custody order unless:

>> (1) the modification is in the best interests of the child; and

>> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . of this chapter.

> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

[13] Indiana Code Section 31-17-2-8 provides that the factors relevant to a custody order are as follows:

> (1) The age and sex of the child.

> (2) The wishes of the child's parent or parents.

> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

> (4) The interaction and interrelationship of the child with:

>> (A) the child's parent or parents;

>> (B) the child's sibling; and

>> (C) any other person who may significantly affect the child's best interests.

> (5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . . .

[14] Here, the trial court concluded that there had not been a substantial change in circumstances justifying modification of custody from Mother to Father. The evidence most favorable to the trial court's judgment is consistent with that determination. Father provided no evidence, other than his own "belief," that the Child had at any time lived with a child molester. Tr. at 17. While Father presented a private investigator's testimony that some registered sex offenders lived in Mother's neighborhood, Vargas testified that he did not let the Child outside unsupervised. Nor was there any evidence the Mother's home was unfit for the Child, or that Mother moved her residence so often that it caused instability in the Child's life. Rather, the only evidence related to Mother's home was that cardboard covered one window, and the family's puppy had defecated on the front porch. And, Father admitted that Mother had been in the same residence for one and a half to two years, which contradicted his

contention that she moved so often that it was harmful to the Child. Taken all together, the evidence does not show a substantial change in circumstances justifying a modification of custody. Father's contentions to the contrary are merely requests that we reweigh the evidence, which we cannot do. *Helmuth*, 837 N.E.2d at 1089.

## Fair and Impartial Hearing

[15] Father also maintains that he did not receive a fair and impartial hearing as required under the due process clause of the United States Constitution[3] because the trial judge was biased against him.

> The law presumes that a trial judge is unbiased. *Carter v. Knox Cty. Office of Family & Children*, 761 N.E.2d 431, 435 (Ind. Ct. App. 2001). To overcome that presumption, the party asserting bias must establish that the trial judge has a personal prejudice for or against a party. *Id*. *Clear bias or prejudice exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before him or her.* *Id*. "Adverse rulings and findings by the trial judge do not constitute bias per se. Instead, prejudice must be shown by the judge's trial conduct; it cannot be inferred from his [or her] subjective views." *Id*. (citations omitted). Said differently, a party "must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced" that party's case. *Flowers v. State*, 738 N.E.2d 1051, 1061 (Ind. 2000).

---

[3] Father does not say under what constitution he brings his due process claim, however, the case he cites in support of his claim relates to the due process clause of the federal constitution. *M.K. v. Marion Cty. Dep't of Child Services (In re J.K.)*, 30 N.E.3d 695, 698 (Ind. 2015).

*Richardson v. Richardson*, 34 N.E.3d 696, 703-04 (Ind. Ct. App. 2015) (emphasis added); *see also* Ind. Judicial Conduct Canon 2 (requiring a judge to perform the duties of judicial office impartially, competently, and diligently). We will tolerate a trial court's "crusty" demeanor towards litigants so long as it is applied even-handedly. *In re J.K.*, 30 N.E.3d at 698. Thus, "[e]xpressions of impatience, dissatisfaction, annoyance, and even anger do not [alone] establish bias or partiality." *Rondeau v. State*, 48 N.E.3d 907, 913 (Ind. Ct. App. 2016) (citing *Harrison v. State*, 707 N.E.2d 767, 790 (Ind. 1999)), *trans. denied*. Further, "[a] judge does not show bias by recognizing the emotional, human elements of a case." *Lambert v. State*, 743 N.E.2d 719, 729 n.8 (Ind. 2001).

[16] Father bases his bias contention on several statements the trial judge made during the January 4, 2017 hearing. However, we note at the outset that Father did not object to any of these comments at the hearing. Where a defendant fails to object to comments a trial judge makes during trial, the issue of the propriety of the comments is waived for review. *Flowers*, 738 N.E.2d at 1061.

[17] Waiver notwithstanding, Father has not overcome the presumption that the trial court was impartial. Father asserts that the trial court showed its bias against him and its advocacy for Mother by stating that the parties[4] were "mud-slinging," Tr. at 94, 95, teaching the Child "hatred and bigotry," Tr. at 101, and not treating each other as they would like to be treated. However, these were

---

[4] Father maintains that these statements related only to him, but a review of the transcript shows that they were directed at both parties.

not statements regarding the merits of the controversy and, therefore, they are not evidence of bias. *Richardson*, 34 N.E.3d at 703. Rather the trial court made these comments within the context of admonishing *both* parties to try to cooperate with each other, thus showing even-handedness. *In re J.K.*, 30 N.E.3d at 698.

[18] Father also maintains that the trial court was advocating for Mother when it pointed out that Juan was innocent until proven guilty of child molesting. However, that was not a statement in Mother's favor but a correct statement of the law. Father also asserts the trial court advocated for Mother when it stated that it was "not here to deal with citizenship," Tr. at 60, and "it would not sit well with [the court]" if Father or his family reported Vargas' citizenship status to immigration officials. Tr. at 101. But the trial court made those comments within the context of stating that Vargas' immigration status was irrelevant to the proceedings, not in order to "advocate" for anyone. Father has failed to show that the trial court was biased against him.[5]

[19] Moreover, even if we assumed—which we do not—that the judge's comments were improper, Father has shown no prejudice as a result of any of the trial court's statements. "[N]ot all untoward remarks by a judge constitute reversible error." *A.N. v. K.G.*, 3 N.E.3d 989, 996 (Ind. Ct. App. 2014) (citing *Cook v. State*, 734 N.E.2d 563, 566 (Ind. 2000)). Rather, the complaining party must show

---

[5] In fact, we note that the trial court actually doubled Father's parenting time with the Child, in effect giving the parties equal time with the Child until she begins school.

that the remarks harmed him or interfered with his right to a fair trial. *Id*.
Father has made no such showing.

# Conclusion

[20] The trial court did not err in denying Father's petition to modify custody. And, by not objecting to the trial court's allegedly biased statements, Father waived his right to appeal on the basis of those statements. Waiver notwithstanding, Father failed to overcome the presumption that the trial court was impartial.

[21] Affirmed.

Riley, J., and Robb, J., concur.