## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 17 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Julie C. Dixon
Alexander N. Moseley
Bryan L. Ciyou
Ciyou and Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Brian C. Hewitt
Michele L. Lorbieski
Hewitt Law & Mediation LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lynn A. Johnson,<br>*Appellant,*<br><br>v.<br><br>Michele Bradberry, as Personal Representative of the Estate of Anthony O. Johnson, deceased,<br>*Appellee* | December 17, 2020<br><br>Court of Appeals Case No.<br>20A-GU-26<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Warren Haas, Judge<br><br>Trial Court Cause No.<br>27D03-1604-GU-13 |

**Crone, Judge.**

# Case Summary

The trial court appointed Lynn A. Johnson as guardian of her brother-in-law, Anthony O. Johnson, but later removed her and appointed Anthony's daughter Michele Bradberry as his personal guardian and Greenfield Banking Company (GBC) as the guardian of his estate. Lynn filed a final accounting, to which both Michele and GBC objected. The day before the scheduled evidentiary hearing, Lynn filed a motion to continue, which the trial court denied. After the hearing, the court found that Lynn breached various fiduciary duties, and it ordered her to pay over $95,000 for reimbursements to the guardianship estate and for Michele's and GBC's attorney fees. Lynn now appeals, arguing that the trial court abused its discretion in denying her motion to continue, surcharging her for breaches of her fiduciary duties, and ordering her to pay attorney fees. We find no abuse of discretion in the denial of Lynn's motion to continue, but we do find that the trial court abused its discretion with respect to some of the surcharges and in ordering Lynn to pay attorney fees. Therefore, we affirm in part, reverse in part, and remand.

# Facts and Procedural History

In April 2016, Lynn filed a petition for the temporary appointment of a guardian over Anthony's person and estate due to his incapacity. The trial court granted the petition and appointed Lynn as temporary guardian. The appointment was made permanent in January 2017. During her guardianship, Lynn filed several inventories, reports, and accountings. In May 2017, Michele filed a petition to remove Lynn as guardian, alleging improper recordkeeping,

self-dealing, and mismanagement of Anthony's estate. In October 2017, the trial court appointed GBC as Anthony's financial fiduciary, and in December 2017, the court appointed GBC as guardian of his estate. In April 2018, the court appointed Michele as guardian of Anthony's person.

[3] In June 2019, Lynn filed a final accounting, to which both Michele and GBC objected; GBC "sought relief in the form of charging [Lynn] for self-dealing, mismanagement, for attorney fees, and to recover assets from [Lynn] and her husband[.]" Appealed Order at 2. On August 7, 2019, Lynn's counsel filed a motion to withdraw, which was granted. On August 19, the trial court set an evidentiary hearing for October 9. On September 9, GBC filed a motion to surcharge attorney fees; the next day, the trial court issued a notice that this motion would also be heard on October 9. On October 8, Lynn filed a motion to continue, stating that an attorney had agreed to represent her, but only if a continuance was granted. GBC and Michele objected, and the trial court denied the motion to continue. The hearing was held as scheduled, and Lynn testified and questioned other witnesses pro se.

[4] On October 20, the trial court issued an order that contains the following relevant findings:[1]

---

[1] We have replaced the trial court's references to the parties with our prior designations.

16. Ind. Code § 29-1-16-4 states:[2]

> "Accounts rendered to the court by a personal representative shall be for a period distinctly stated and shall consist of three (3) schedules, of which the first shall show the amount of the property chargeable to the personal representative; the second shall show payments, charges, losses and distributions; the third shall show the property on hand constituting the balance of such account, if any. When an account is filed, the personal representative shall also file receipts for disbursements of assets made during the period covered by the account. Whenever the personal representative is unable to file receipts for any disbursements, the court may permit him to substantiate them by other proof. The court may provide for an inspection of the balance of assets on hand. The court may, upon its own motion, or upon petition, provide that verification of accounts or credits thereon may be made by the unqualified certificate of a certified public accountant in lieu of receipts or other proof."

17. Because Lynn filed her final accounting, she is deemed to be the Plaintiff as to the objections filed such that she had the burden of proving her accounting.

18. The Court takes judicial notice of the prior filings by Lynn and waives further introduction into evidence of those filings, or any documents attached thereto.

---

[2] This statute is made applicable to guardianship proceedings pursuant to Indiana Code Section 29-3-2-6.

19. The Court rejects the Final Accounting filed by Lynn and sustains most of the objections filed by GBC and Michele.

20. The Final Accounting filed by Lynn does not comply with the Indiana Probate and Guardianship codes. In fact, none of her purported inventories and accountings comply with the legal requirements for guardians. Not only was the form of her filings not compliant, the figures used in those documents varied throughout. Because her documents did not comply, the task of the Court, GBC and Michele to review her accountings was made infinitely more difficult and time consuming.

21. Lynn engaged in repeated acts of self-dealing without Court approval, which included gifts to her husband, employing herself to perform work on behalf of Anthony without Court approval, and selling items to Anthony, and purchasing items from Anthony's estate.

22. Lynn used funds of Anthony to pay her husband for an alleged debt owed to him by Anthony that was at least ten (10) years old.

23. Lynn improperly sold Anthony's vehicle at a deep discount without Court approval and without proper sale value or documentation.

24. After being discharged by this Court as estate guardian, Lynn continued to pay expenditures on behalf of Anthony.

25. Lynn failed to keep receipts for transactions, failed to write checks for expenditures, and used numerous cash transactions. Lynn also transferred funds online from the guardianship account to her personal account, without receipts.

26. Lynn attempted to charge for work done o[n] behalf of the estate, despite informing the Court at the first hearing of this matter that she had no intention of doing so. Moreover, the

services provided by Lynn on behalf of Anthony provided no benefit to the estate. Rather, her actions have cause[d] substantial financial harm to the estate.

27. Lynn blamed her accounting failures on her previous attorneys and the accountants hired by those attorneys. In addition, she blamed her own employees and her husband. In any event, all of the accounting errors are attributable to Lynn as she was in charge as estate guardian and employed these individuals to perform services on behalf of the estate. Most of these services did not benefit the estate and only served to obfuscate her misconduct.

28. GBC has incurred attorney fees to date in this matter in the sum of $24,549.20 of which $3,660.00 was for managing the guardianship estate and $20,889.20 for investigating the Final Accounting filed by Lynn. The Court finds that these fees are reasonable and necessary and therefore GBC is authorized to pay these fees from the Guardianship estate.

29. The Court finds that the fees incurred by GBC in the sum of $20,889.20 for investigating the Final Accounting should be assessed against Lynn.

30. Counsel for Michele provided services in representing Michele as guardian of Anthony's person in the amount of $8,350. The Court finds that these fees are reasonable and necessary and GBC is authorized to pay those fees directly to counsel for Michele.

31. Counsel for Michele also contributed to the investigation of this matter, and has incurred fees in the course of representing Michele relating to the breaches of fiduciary duty by Lynn. The Court finds that attorney fees for Michele in the amount of $9,125 should be assessed against Lynn.

32. The Court finds that the account of Lynn should be surcharged for breaches of fiduciary duties as follows:

| | | |
|---|---|---|
| A. | Improper gifts to her Husband | $8,000.00 |
| B. | Improper gifts to her Husband | $14,500.00 |
| C. | Self-dealing with Anthony's personal property | $13,200.00 |
| D. | Selling Anthony's truck at a discount | $8,825.15 |
| E. | Expenditures after discharge | $2,739.99 |
| F. | Self-dealing in hiring herself | $2,445.16 |
| G. | Improper expenditure on attorney fees | $4,000.00 |
| H. | Improper transfers without documentation | $5,700.00 |
| I. | $5,813.66 for missing VA benefit checks [was] not charged | |
| J. | Attorney fees for GBC for removal of Lynn | $6,440.00 |
| K. | Attorney fees for GBC for her fiduciary breaches | $20,889.20 |
| L. | Attorney fees for Michele for her fiduciary breaches | $9,125.00 |
| **TOTAL** | | **$95,864.50** |

The Court now enters judgment against Lynn in the amount of $95,864.50. This judgment shall bear interest at the statutory rate of eight per cent (8%) per annum until paid in full.

Appealed Order at 2-4. Lynn filed a motion to correct error, which the trial court denied. Lynn now appeals.[3] Additional facts will be provided below.

---

[3] Anthony died on May 12, 2020. Michele was appointed as personal representative of his estate and is the sole appellee of record.

# Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in denying Lynn's motion to continue.

We first address Lynn's argument that the trial court erred in denying her motion to continue. Continuances are governed by Indiana Trial Rule 53.5, which provides in pertinent part, "Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence." A trial court's ruling on a motion to continue is reviewed for an abuse of discretion, and there is a strong presumption that the court properly exercised its discretion. *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009). "A denial of a motion for continuance is [an] abuse of discretion only if the movant demonstrates good cause for granting it." *Id*. "There are no 'mechanical tests' for determining whether a request for a continuance was made for good cause." *In re M.S.*, 140 N.E.3d 279, 285 (Ind. 2020). "Rather, the decision to grant or deny a continuance turns on the circumstances present in a particular case[.]" *Id*. "The withdrawal of legal counsel does not entitle a party to an automatic continuance, and the moving party must show diligence in procuring counsel." *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 311 (Ind. Ct. App. 2000) (citation omitted).

Lynn failed to make that showing here. In her motion to continue, which was neither verified nor supported by an affidavit or other evidence, Lynn stated that her previous attorney (her third in this proceeding) withdrew on August 7, 2019. In mid-August, she communicated with a fourth attorney, who reviewed

case materials "and had informal discussions with opposing counsel at that time." Appellant's App. Vol. 3 at 215. On August 19, the trial court set the hearing for October 9. According to her motion, Lynn did not re-establish communication with the attorney until October 1, and "[d]ue to busy schedules, substantive discussions about the case were not held" until the weekend of October 5 and 6. *Id.* The attorney agreed to represent Lynn, but only if a continuance was granted, because he was scheduled to attend a hearing in another county on October 9 in a CHINS case that was "subject to statutory deadlines, which makes continuances disfavored." *Id.* The attorney entered a limited appearance for Lynn and filed the motion to continue on October 8.

[7] Clearly, Lynn was dilatory, rather than diligent, in procuring counsel to represent her at the hearing. She had "informal discussions" with potential replacement counsel around the time that the trial court scheduled the hearing, then sat on her hands for over a month and didn't bother to file a motion to continue until the day before the hearing. Based on these facts and

circumstances, the trial court did not abuse its discretion in denying the motion.[4]

## Section 2 – The trial court abused its discretion in imposing some surcharges.

[8] We next address Lynn's argument that the trial court erred in surcharging her for breaches of her fiduciary duties as Anthony's guardian. "All findings and orders of the trial court in guardianship proceedings are within its discretion." *In re Guardianship of Hollenga*, 852 N.E.2d 933, 936 (Ind. Ct. App. 2006) (citing, inter alia, Ind. Code § 29-3-2-4(a)). Thus, we will review the trial court's order under an abuse of discretion standard. *Id*. at 937. "In determining whether the trial court abused its discretion, we review the court's findings and conclusions,

---

[4] Lynn cites *Hess v. Hess*, 679 N.E.2d 153, 154 (Ind. Ct. App. 1997), for the proposition that "among the things to be considered on appeal from the denial of a motion for continuance" is whether the denial "resulted in the deprivation of counsel at a crucial stage in the proceedings." In *Hess*, the appellant's counsel withdrew on the Friday before a Wednesday dissolution trial and refused to file a motion to continue. The appellant attempted to obtain counsel over the weekend and on Monday filed a pro se motion to continue that the trial court did not deny until the day of trial. In holding that the ruling was an abuse of discretion, the *Hess* court found it "significant that the record [did] not demonstrate dilatory tactics" on the appellant's part and that the "denial of a continuance deprived [him] of counsel at the most crucial stage in the proceedings, the dissolution hearing itself." *Id*. at 155. Here, Lynn's counsel withdrew two months before the hearing, and the record demonstrates that Lynn was dilatory in obtaining replacement counsel; thus, she had only herself to blame for her lack of representation on the hearing date. Moreover, as Michele observes, Lynn is an accountant and therefore "was in a position to provide detailed testimony regarding her accountings that were at issue at the … hearing." Appellee's Br. at 16. Lynn also asserts that the denial of her motion to continue resulted in a due process violation, but she cites no authority to support this assertion. "Assertions of error unsupported by either cogent argument or citation to authority will result in waiver of any error on review." *Dierckman v. Area Planning Comm'n of Franklin Cnty.*, 752 N.E.2d 99, 106 n.6 (Ind. Ct. App. 2001), *trans. denied*. Finally, Lynn relies on *Destination Yachts, Inc. v. Fine*, 22 N.E.3d 611, 616 (Ind. Ct. App. 2014), in asserting that we must consider whether a delay would have prejudiced GBC and Michele to an extent sufficient to justify denial of the continuance. Even assuming that any prejudice to GBC and Michele would have been minimal, this consideration is not dispositive, and it certainly does not outweigh what could be seen as Lynn's deliberate tardiness in obtaining replacement counsel.

which we may not set aside unless they are clearly erroneous." *In re Guardianship of I.R.*, 77 N.E.3d 810, 813 (Ind. Ct. App. 2017). "We will consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment, and we will not reweigh the evidence nor will we reassess the credibility of witnesses." *Id*.

[9] Indiana Code Section 29-3-1-6 provides that a guardian "is a fiduciary and is appointed by a court to be a guardian or conservator responsible as the court may direct for the person or the property of an incapacitated person or a minor."[5] Indiana Code Section 29-3-8-3 provides in pertinent part that a guardian shall "[a]ct as a guardian with respect to the guardianship property and observe the standards of care and conduct applicable to trustees[,]" "[p]rotect and preserve the property of the protected person[,]" and "[c]onserve any property of the protected person in excess of the protected person's current needs." Except as provided in Indiana Code Section 29-3-11-2, and except for gross misconduct, a guardian is immune from any civil liability resulting from the guardian's performance. Ind. Code § 29-3-11-4. Pursuant to Indiana Code Section 29-3-11-2(c), a guardian is personally liable to a protected person for acts or omissions in the course of the administration of the trust of the guardian only for a breach of duty to the protected person. Any question of the personal liability of the guardian to the protected person "may be determined in a

---

[5] Indiana Appellate Rule 46(A)(2) provides that the table of authorities in an appellant's brief "shall list each case, statute, rule, and other authority cited in the brief, with references to each page on which it is cited." Lynn's table of authorities lists a dozen statutes but does not specify on which pages they are cited.

proceeding for accounting, surcharge, indemnification, or other appropriate proceeding or action." Ind. Code § 29-3-11-2(d).

### 2.1 – The trial court did not abuse its discretion in surcharging Lynn $22,500 for improper gifts to her husband.

[10] Lynn contends that no evidence was presented regarding improper gifts of $8000 and $14,500 to her husband. We disagree. Indiana Code Section 29-3-8-5 provides,

> Any:
>
> (1) sale or encumbrance of any part of the property of a protected person to a guardian or guardian's spouse, agent, attorney, or any corporation, trust, or other organization in which the guardian has a substantial beneficial interest; or
>
> (2) other transaction involving the property that is affected by a substantial conflict between the interest of the protected person and the guardian's personal interest;
>
> is void unless approved by the court.

A receipt prepared by Lynn in 2016 indicates that Anthony's estate paid her husband $8000 as a gift. Ex. Vol. 3 at 244. Lynn acknowledged that she had sold Anthony's truck for $8000, which "didn't go into the guardianship

account, it went as a gift to [her] husband." Tr. Vol. 2 at 45-46. This was impermissible without court approval under Indiana Code Section 29-3-8-5.[6]

[11] As for the $14,500 gift, an invoice prepared by Lynn in 2014 indicates that her husband billed Anthony for a cherry wood grandfather clock and ice chest that he had built sometime between 2002 and 2004, as well as for "Misc. Shop Equipment" that apparently was used to build them. Ex. Vol. 3 at 8. According to Lynn, her husband built those items "for Anthony to hold until [her husband's daughter] would inherit [them]." Tr. Vol. 2 at 37-38. Lynn paid this invoice with a check from Anthony's estate in September 2016. Ex. Vol. 3 at 8, 213. Characterizing this transaction as a "gift" is charitable indeed, but we

---

[6] In the alternative, Lynn asserts that the transaction was valid under Indiana Code Section 29-3-8-4(7), which authorizes a guardian "[t]o distribute income and discretionary amounts of principal" to "an adult relative of the protected person" as "the guardian believes to be in the best interests of the protected person[.]" Leaving aside the question of whether a "gift" to a protected person's brother is in the protected person's best interests, this statute cannot be used as an end run around Indiana Code Section 29-3-8-5, which prohibits diverting property to a guardian's spouse without court approval. *See Gibson v. Ind. Dep't of Corr.*, 899 N.E.2d 40, 58 (Ind. Ct. App. 2008) ("We presume the Legislature does not enact useless statutes or statutory provisions and intends to avoid unjust or absurd results."), *trans. denied* (2009).

defer to the trial court's assessment here.[7]  The trial court had firsthand knowledge of whether it approved the $8000 and $14,500 disbursements to Lynn's husband as required by Indiana Code Section 29-3-8-5, and we may not second-guess its implicit determination that it did not.  In sum, we find no abuse of discretion here.

### 2.2 – The trial court abused its discretion in surcharging Lynn $13,200 for self-dealing with Anthony's property.

[12]  Lynn argues that the trial court abused its discretion in surcharging her $13,200 for self-dealing with Anthony's property.  We agree.  This figure derives from a household inventory spreadsheet from May 2016.  The spreadsheet lists several dozen items of Anthony's personal property, including a dog kennel, a microwave, wall hangings, etc.  One column in the spreadsheet is entitled "Date purchased"; no purchase date is listed for any of the items.  Ex. Vol. 4 at 152.  Another column is entitled "Where purchased"; only seven items have an

---

[7] Lynn argues that the transaction was valid pursuant to Indiana Code Section 29-3-8-7, which states,

> If the court finds that:
>
> (1) an incapacitated person who is a protected person did, before the person became an incapacitated person, enter into a written contract, including a contract for the sale, division, or other disposition of property;
>
> (2) the obligations of the contract have not been fully carried out; and
>
> (3) the contract was a good and binding contract at the time of the making of the contract;
>
> the court shall authorize the guardian of the protected person to perform the contract without notice or hearing unless otherwise ordered by the court.

The fatal flaw in this argument is that the trial court did not make the required findings regarding the existence and validity of the purported contract and did not authorize Lynn to perform the contract.

entry under this column. *Id*. According to the spreadsheet, a cherry ice chest, four wooden boxes with tools, and an air compressor were purchased from "Bill," Lynn's husband, and a set of kitchen table and chairs was purchased from Lynn. *Id*. Another column is entitled "Purchase price," and the only item with an entry under this column is the kitchen set, which is listed as "Gift." *Id*. A final column is entitled "Estimated current value"; the ice chest is valued at $4400, three of the tool boxes at $1000 each, the fourth tool box at $1800, and the air compressor at $3000. *Id*.

[13] Several errors are readily apparent. First, the total value of the items purchased from Lynn's husband is $12,200, not $13,200 as stated in the trial court's order. Second, Lynn was already surcharged for a cherry ice chest, and there is no evidence in the record regarding a second ice chest. Third, no specific allegations were made, and no specific evidence was presented, that any item other than the ice chest was purchased during the guardianship. And fourth, there is no evidence of the actual price that was paid for those items. Therefore, we reverse and remand with instructions to vacate the $13,200 surcharge and reduce the judgment accordingly.

### 2.3 – The trial court did not abuse its discretion in surcharging Lynn $8825.15 for selling Anthony's truck at a discount.

[14] Lynn also contends that the trial court abused its discretion in surcharging her $8825.15 for selling Anthony's truck at a discount. A May 2016 inventory lists the value of the truck, a 2014 Chevy Silverado, at $24,000. Exhibit Vol. 4 at 154. Lynn testified that in 2016 she sold the truck to the treasurer of her 2011

mayoral campaign for $8000, which she gave to her husband as a gift. Tr. Vol. 2 at 46-49. An August 2017 amended inventory describes the truck as "damaged" and lists two values: $8000, the amount for which the truck was sold, and $16,825.15, which is described on another line as its appraised value. Ex. Vol. 3 at 17. Indiana Code Section 29-3-8-3(2) provides that a guardian "shall … [p]rotect and preserve the property of the protected person subject to guardianship"; selling property for less than half its appraised value is an obvious breach of this duty, and we cannot say that the trial court abused its discretion in surcharging Lynn for this breach.[8]

### 2.4 – We are unable to determine whether the trial court abused its discretion in surcharging Lynn $2739.99 for expenditures after discharge.

Lynn complains that the trial court "provide[d] no explanation of what exactly 'expenditures after discharge' entailed, or why [she] should be surcharged" $2739.99. Appellant's Br. at 36. Michele asserts that "Lynn's accounting includes $3,010 for reimbursements to Lynn without receipts." Appellee's Br. at 21 (citing Appellant's App. Vol. 3 at 182 and Ex. Vol. 4 at 145-51). But those reimbursements were made *before* Lynn's discharge. Lynn claims that she continued to pay Anthony's expenses "from her own personal account" after her discharge and that she "should be commended for her selfless actions" instead of being "punished" and "surcharged[.]" Appellant's Br. at 36. We are

---

[8] At the hearing, Lynn testified that she was told by a third party that $8000 was a fair price for the truck. Tr. Vol. 2 at 42. The trial court was not required to credit this testimony.

unable to ascertain the basis for the trial court's surcharge in this instance, and therefore we remand with instructions to either clarify it or vacate it if it is not supported by the evidence and reduce the judgment accordingly.

### 2.5 – *The trial court abused its discretion in surcharging Lynn $2445.16 for self-dealing in hiring herself*

[16] The trial court surcharged Lynn $2445.16 for self-dealing in hiring herself. This figure derives from an inventory schedule showing bills paid by check without invoice. Ex. Vol. 4 at 156. All but one of the checks appear to be for goods or services provided by entities or persons other than Lynn, such as a lawn service company, the BMV, and IU Health; the one check to Lynn is for "court fees" of $220. *Id*. Lynn directs us to Indiana Code Section 29-3-9-9(a), which provides, "Whenever a guardian is appointed for an incapacitated person or minor, the guardian shall pay all expenses of the proceeding, including reasonable medical, professional, and attorney's fees, out of the property of the protected person." She asserts that the schedule demonstrates no self-dealing and that the trial court abused its discretion in surcharging her $2445.16. Michele offers no specific evidence to refute this assertion.[9] Therefore, we reverse and remand with instructions to vacate the surcharge and reduce the judgment accordingly.

---

[9] Michelle does not assert that the check payees did not receive the funds or that the goods and services did not benefit Anthony or his estate. Consequently, we cannot agree with the dissent that a surcharge is appropriate here.

## *2.6 – The trial court abused its discretion in surcharging Lynn $4000 for improper expenditure on attorney fees.*

[17]    The trial court surcharged Lynn $4000 for improper expenditure on attorney fees.  Lynn asserts that it is "unclear" how the trial court arrived at this amount.  Appellant's Br. at 38.  The trial court's order denying Lynn's motion to correct error indicates that the amount derives from "attorney's fees paid by [Lynn] to Tia Brewer without Court approval[.]"  Appealed Order at 5.  But the record suggests that Brewer was paid only $2000.  Ex. Vol. 3 at 214.[10]  At the hearing, the trial court stated that, "to the best of [its] knowledge," Brewer "never entered an appearance," and that the court "never entered an order […] that would've allowed that to have been paid."  Tr. Vol. 2 at 52.  Lynn points out that, pursuant to Indiana Code Section 29-3-9-9(a), a trial court "does not have the discretion to determine whether to allow payment of attorney's fees" in a guardianship proceeding; it only has discretion to determine the reasonableness of the fees.  *In re Guardianship of M.K.*, 844 N.E.2d 555, 558 (Ind. Ct. App. 2006).  A court may be within its discretion to determine that *no* fee is reasonable for an attorney who never entered an appearance for a guardian.  But because the trial court's $4000 surcharge does not appear to be supported by the record, we reverse and remand with instructions to revisit this issue and revise the surcharge and judgment accordingly.

---

[10] The dissent suggests that the $4000 figure includes $2000 paid as a retainer for attorney Mike Franceschini, but neither the trial court's order nor Michele's brief mentions this transaction.  On remand, the trial court may offer any necessary clarifications on this point.

### 2.7 – The trial court abused its discretion in surcharging Lynn $5700 for improper transfers without documentation.

[18] The trial court surcharged Lynn for $5700 that she transferred from the guardianship account to her account without documentation of expenditures that she purportedly made on Anthony's behalf. The transfers and expenditures are listed in an inventory schedule. Ex. Vol. 4 at 163. Unlike the bills paid by check without invoice mentioned above, Lynn had no documentation of any kind regarding the expenditures, which is a breach of her fiduciary duty under Indiana Code Section 29-1-16-4. But Lynn observes that at the hearing, the trial court stated that it was "not terribly worried about" $600 that she purportedly "paid out for a good purpose" to Michele, and further indicated that that amount would be taken off the "list." Tr. Vol. 2 at 66. On appeal, Michele does not claim that she did not receive those funds or that they were not paid out for a good purpose. Consequently, we reverse and remand with instructions to revise the surcharge to $5100 and reduce the judgment accordingly.

## Section 3 – The trial court abused its discretion in surcharging Lynn for GBC's and Michele's attorney fees.

[19] Finally, Lynn contends that the trial court abused its discretion in surcharging her for GBC's and Michele's attorney fees. We agree. Our supreme court has explained that "Indiana adheres to the American rule that in general, a party must pay his own attorneys' fees absent an agreement between the parties, a statute, or other rule to the contrary." *R.L. Turner Corp. v. Town of Brownsburg*,

963 N.E.2d 453, 458 (Ind. 2012). The trial court cited no applicable statutory basis for awarding fees in either its original order or its order denying Lynn's motion to correct error, and Michele has cited none on appeal.[11] Therefore, we reverse and remand with instructions to vacate the fee surcharges and reduce the judgment accordingly.

[20] Affirmed in part, reversed in part, and remanded.

Robb, J., concurs.

Brown, J., concurs in part and dissents in part with separate opinion.

---

[11] Michele does cite *In re Wilson*, 930 N.E.2d 646, 652 (Ind. Ct. App. 2010), *trans. denied* (2011), in which the trial court ordered a trustee to pay the trust beneficiaries' attorney's fees pursuant to Indiana Code Section 30-4-3-11(b), which specifically provides that a trustee is liable to beneficiaries for "reasonable attorney's fees incurred by the beneficiary in bringing an action" for breach of trust. No such statute applies here.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lynn A. Johnson, <br> *Appellant*, <br><br> v. <br><br> Michele Bradberry, as Personal Representative of the Estate of Anthony O. Johnson, deceased, <br> *Appellee*. | Court of Appeals Case No. 20A-GU-26 |

**Brown, Judge, concurring in part and dissenting in part.**

[21] I concur with Section 1 of the majority decision, and respectfully dissent from its reversal of certain surcharges. Lynn appeals from a negative judgment, and a party appealing from a negative judgment will prevail only if the party establishes the judgment is contrary to law. *See Bayview Loan Servicing, LLC v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1067 (Ind. Ct. App. 2016). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn lead to only one conclusion and the trial court reached a different conclusion. *Id*.

[22] Regarding the surcharge of $2,445.16 discussed in Section 2.5, although the inventory schedule lists payees other than Lynn for all but one check, *see*

Exhibits Volume 4 at 156, the schedule states the amounts were paid without an invoice, and I would affirm the surcharge.

[23] With respect to the surcharge of $4,000 for improper expenditures for attorney fees discussed in Section 2.6 of the majority decision, in addition to the $2,000 paid to attorney Brewer, the record includes a check for $2,000 for a retainer for attorney Mike Franceschini, *see id*. at 169, and at the hearing Michele's attorney stated that the court approved certain fees for Franceschini which "were all paid by Greenfield. So anything that Mr. Franceschini was paid for out [of] the guardianship estate is not approved . . . if that helps to clarify," and the court replied "[i]t does." *See* Transcript Volume 2 at 62-63. I would find the court did not err in imposing the $4,000 surcharge.

[24] As for the majority's reversal of the attorney fees award, the trial court found that none of Lynn's purported inventories and accountings complied with the legal requirements for guardians, making review of them by the court, GBC, and Michele more difficult and time consuming. Additionally, Lynn failed to keep receipts, made numerous cash transactions, and transferred funds to her personal account without receipts; GBC incurred $24,549.20 in attorney fees, of which $20,889.20 was attributable to investigating Lynn's accounting; and Michele's counsel provided services of $8,350 in representing her as guardian and $9,125 in representing her relating to Lynn's breaches of fiduciary duty. Counsel for GBC and Michele submitted attorney fee affidavits reflecting the

amounts found by the court. Michele cites Ind. Code § 29-3-11-2[12] and maintains "[t]he attorneys' fees surcharged against Lynn by the trial court are part of the damages that flow from her breaches of fiduciary duty, and must be awarded to provide complete relief to Anthony for her breaches of fiduciary duty." Appellee's Brief at 24. I agree. The trial court could have ordered reimbursement from the guardianship estate, which would then be entitled to reimbursement from Lynn. The trial court found that Lynn should pay the attorney fee amounts of $20,889.20 and $9,125 related to her fiduciary breaches, and I would affirm these findings.

---

[12] Ind. Code § 29-3-11-2 provides in part:

> (c) The guardian or person acting under a protective order is personally liable to the protected person for acts or omissions in the course of the administration of the trust of the guardian or person acting under a protective order only for a breach of duty to the protected person.

> (d) Any question of liability of the guardian or person acting under a protective order personally to the protected person may be determined in a proceeding for accounting, surcharge, indemnification, or other appropriate proceeding or action.